## HASTY & UX. *vs.* JOHNSON.

Under *Stat.* 1783, *ch.* 32, an administrator  is not required to  give a new bond, on being licensed to make sale of the real estate of his intestate, except in those cases where he *is* authorized to sell the *whole* of such real estate, lest by a sale of part the residue would be injured.

An administrator selling land by license, under *Stat.* 1821, *ch.* 60, *sec.* 29, cannot convey any other or greater estate than the intestate had in the land.

A deed of a mill,  dam,  and falls,  "*and a right to the road and landing to haul logs as has been customary*," conveys only an easement in the road and landing.

THIS was a writ of entry dated *Feb.* 18, 1823, upon the seisin of the demandants within thirty  years,  for possession of one fifth

part of two pieces of land, containing 58 acres more or less, formerly the estate of *George Johnson*, who was father of the *feme* demandant, and also of the tenant ;—and it was tried before *Weston* J. upon the general issue.

In the defence it was admitted or proved that the tenant was duly appointed administrator of his father ;—that the estate was represented insolvent ;—and that the administrator, by the Court of Common Pleas in *Cumberland*, at *June* term 1804, was duly licensed, for payment of the debts of the deceased and incidental charges, " to sell and convey the mills, and *so much* of the residue " of the house and land belonging to the estate of said deceased, " as shall be necessary to satisfy the said debts and incidental " charges ;—the said administrator taking the oath, and posting " up notifications, as the law in such cases requires." The Court did not direct notice of the sale to be published in any newspaper. The oath required by law was duly administered, but no bond was given to the Judge of Probate, except the general administration bond.

The tenant produced a copy of the *Portland Gazette* of *August* 6, 1804, notifying the sale under the license ; and a witness testified that he was a subscriber to that paper at that time, and recollected reading the advertisement, and seeing a similar one posted in a store in *Windham*.

In pursuance of *such* notice a sale was fairly made *August* 23, 1804, to one *Winship*, he being the highest bidder, of a tract of twenty four acres of land, being *part* of the estate of the deceased, to hold *in common and undivided*. *Winship* testified that he paid nothing for the land, but that he purchased in behalf of the tenant ; who, on the following day, gave him a deed of this tract, in his capacity of administrator, with the covenants usual in such cases ; and on the same day took back a reconveyance from *Winship* to himself.

As to the second tract, the tenant read a deed dated *Nov.* 26, 1802, by which his father conveyed to him in fee " all his right, " title and interest in and to the falls at Horse-Beef, so called, " together with a right in the dam and booms, and *a right to the* " *road and landing to haul logs and boards, as has been customary.*" This second tract was claimed as part of the landing referred to in the deed.

It was proved that from eight to fifteen years ago this landing lay common, not inclosed by a fence ; and that boards had often been laid upon it by the mill-owners at Horse-Beef falls in *Gorham*;—that for about seven years, or more, it had been fenced and tilled ;—that formerly there were several saws at those falls, but for several years past there had been but one there ;—that the land was not now used or needed as a landing place ;—and one witness testified that he had known it more than forty years, and that it never was considered appurtenant to any of the mills.

Upon this evidence the Judge instructed the jury that the seisin of the ancestor, and the descent of one fifth part of his estate to the wife of *Hasty* the demandant, being proved or admitted, the demandants were entitled to recover ; unless the tenant shewed title in himself, either from the ancestor in his life time, or legally acquired since his decease ;—that as to the first tract, he had not made out a sufficient title under the license to sell as administrator ;—and that as to the second tract, if it ever was a landing attached to the mill, the tenant only had an easement therein, for the disturbance of which he might have a remedy at law ; but that proof of such easement, if it was made out, did not maintain the issue on his part.

The jury thereupon returned a verdict for the demandants ; which was taken subject to the opinion of the whole Court upon the correctness of those instructions.

*Hopkins*, for the tenant, contended—that although the evidence did not shew a full compliance with every requisition of the statute respecting giving notice by administrators, previous to the sale of real estate ; yet there was sufficient ground for the jury to presume, after the lapse of nineteen years, that due notice had been given ; and the evidence to this point ought to have been weighed by the jury, and not by the Court. *Brown v. Wood* 17 *Mass.* 72. *Pejepscot Proprietors v. Ransom* 14 *Mass.* 145. *Blossom v. Cannon ib.* 178. 1 *Phil. Evid.* 120—126. 1 *Burr.* 434. *Cowp.* 109. 2 *H. Bl.* 297. *England v. Slade* 4 *D. & E.* 683. 10 *Johns.* 377. 3 *Mass.* 399.

There is no case shewing that a conveyance by an administrator to hold *in common* is *therefore bad* ; and having proceeded

in this instance fairly, under a license, his doings ought, if possible, to be supported. But the deed of the mill will be found, on examination, to convey upwards of thirty acres, and the administrator's deed conveys in truth just the residue of the demanded premises, though it is not technically expressed by the scrivener. And if not so, yet the heirs cannot impeach it ;—for the sale was made *bona fide*, under authority of law, for the payment of debts, and the proceeds honestly accounted for ;—and the heirs having full knowledge of the facts, and acquiesced nearly twenty years, must be understood to have assented. *Coleman v. Anderson* 10 *Mass.* 105. *Perkins v. Fairfield* 11 *Mass.* 227. 1 *Starkie* 109.

The second tract passed under the grant of the "*privilege*" of the mill. Without such privilege or landing place, the mill itself would be useless ; and as at the time of the grant it was so used, and was visibly appurtenant to the mill, it must be supposed to have been in contemplation by the parties. All the words in a deed must be satisfied, if possible ; and yet upon any other construction, *this* word is senseless. *Shep. Touchst.* 83, 84.

*Adams*, for the demandants, insisted on the neglect of the administrator to give notice as by law required previous to the sale of real estate, which, he contended, must be proved even *after* the lapse of twenty years. *Gray v. Gardiner* 3 *Mass.* 399.

He had neglected to give bond previous to such sale ; which the statute seems to contemplate, and usage always requires. *Knox v. Jenks* 7 *Mass.* 488. *Wellman v. Lawrence* 15 *Mass.* 326. *Nelson, Judge &c. v. Jaques* 1 *Greenl.* 144.

The deeds, being of the same date, form but one conveyance, which is from the administrator to himself. Such a conveyance is void, as against the policy of the law, which does not afford its encouragement to fraud or abuse of trust. If it be not so, a door would be opened to unlimited corruption.

The sale at auction is also void, being of a tenancy in common, of which the intestate was never seised. No administrator has authority thus to create new tenancies, at his pleasure.

The deed of the smaller parcel conveys only an easement or right of way, for the use of the mill ; and this having ceased to exist, the easement is gone also.

MELLEN, C. J. delivered the opinion of the Court as follows.

In this action two pieces of land are demanded; and the tenant claims to hold them under different titles. The first under a title derived from himself as administrator of *George Johnson* his father, and father also of the wife of *William Hasty.* The second piece under a conveyance from the intestate himself. The original title of *George Johnson* is not disputed; and therefore, as one of the demandants is his daughter and one of his heirs, the demandants are entitled to recover, unless the title to both the tracts demanded has been legally conveyed to the tenant. This action was commenced *Feb.* 18, 1823. In *June* 1804, the tenant was duly licensed to sell so much of the real estate of said *George Johnson* as would raise a sum sufficient to pay the amount of the intestate's debts; which amount is not particularly stated in the report. A sale of the first tract was made on the 23d of *August* 1804, to *Seth Winship*; and on the 24th, a deed thereof was given to him by said administrator; and on the same day said *Winship* conveyed the same to the tenant in fee by his deed of that date ; which deeds were duly acknowledged and recorded. The deed purports to convey to said *Winship* twenty-four acres in common and undivided with the residue of the tract of which it is a part. The first objection to this deed is that the administrator, *Johnson,* gave no bond to the Judge of Probate prior to the sale. We do not sustain this objection. The first section of the statute of *Massachusetts* 1783, *ch. 32,* under which the sale was licensed, does not require any special bond; though a usage has prevailed to demand and receive one. Such special and additional bond is only required when a sale of the whole estate, or of more than is necessary for the payment of debts, is considered advisable, to prevent the injury to the residue by means of such partial sale, as provided in the second section of the said statute.

The second objection is, that there is no direct proof that legal notice was given of the intended sale. This is apparent from the report; but it is urged by the counsel for the tenant, that the Judge, instead of deciding against the legality of the sale, should have left the evidence of notice, such as it was, to the consideration of the jury, with instructions to them that they might, from

the circumstances actually proved, presume that the notice by law required, was given, after the lapse of nineteen years; and he has cited several cases in support of this position. Most of these have no relation to conveyances of the kind in question. *Coleman v. Anderson* was a case of presumption after the lapse of more than thirty years. So *Pejepscot Proprietors v. Ransom* was a case where the collector's deed was made in the year 1780. It is true that in the case of *Blossom v. Cannon* the Court said a jury might presume that the collector had been sworn after a lapse of about seventeen years. The cases above cited relate to sales by collectors of taxes; not executors or administrators. In *Gray v. Gardner*, the question arose upon a sale by an administrator, which had been made more than twenty years before the suit; and the jury were permitted to presume that notice of sale &c. was duly given; and though there was much deficiency in the evidence on this point, still, many attending circumstances were noticed by the Court, as calculated to aid and strengthen the presumption. And beyond all this, much reliance was placed on the circumstance that at the time of the sale there was no law in force pointing out the mode of perpetuating the evidence of the transaction. The law on that subject was passed *Feb.* 14, 1789, and by means of it the present tenant might have easily preserved record evidence of the regularity of his proceedings, if they were regular. Considering this circumstance, and also the fact that he himself was the administrator who made the sale, it would seem that there is less room, than in common cases, to indulge presumptions in favor of one who seems to have been very inattentive in the discharge of his duty in this respect. If a man shall not take advantage of his own wrong, it would seem that he who has been negligent in respect to his own duty and interest, has less claims than third persons have upon the Court or the jury for the aid of presumptions in favor of his care and correctness. We are therefore strongly inclined to believe that this objection is fatal, as regards the first tract of land demanded; still we do not mean to give a definite opinion on this point, or to place the decision of the cause as to this tract upon the ground above stated; because we think that on another principle the sale of the twenty four acres is illegal. The deed of the admin-

istrator purports to convey this piece in common with the residue of the tract. · The tenant's counsel has argued that from the writ the fact appears otherwise. We do not think so. Besides, the tenant is estopped by his own deed to say that the conveyance was in severalty. We are not aware of any *authority* which one man has to convert the sole tenancy of another into a tenancy in common except in the case provided for in the 29th *sec.* of the act of 1821, *ch.* 60, or how a tenant in common can convert his estate into a several tenancy, without the consent of his cotenant, or by process of law. A sole owner may do it himself; but the statute under the supposed authority of which the sale in question was made, gives no such power in terms; and the language of it seems evidently to have respect only to a sale of a part by metes and bounds. By way of illustration, it may be observed that when a creditor has an execution against a debtor who owns real estate in common, if he would extend his execution on this estate, he must levy on a part in common. *Baldwin v. Whiting & al.* 13 *Mass.* 57. So if the debtor owns in severalty, the creditor must levy on a part in severalty. So if a creditor would extend his execution on estate of which his debtor was sole seised at the time of his death, he must levy his execution on a part in severalty, and by metes and bounds, unless he should levy on the whole, or the cases should fall within the provisions of said 29th section. We do not perceive that an administrator has any more power than a creditor to change the tenure. The words of the first section above quoted are—" and every executor or administrator, being " so licensed and authorised as aforesaid, shall and may, by virtue " of such authority, make, sign and execute, in due form of law, " deeds and conveyances for *such houses, lands or tenements* as " they shall so sell, which instruments shall make as good a title " to the purchaser, &c." as the testator or intestate had. The above expression " *such houses, lands or tenements*" would not be correct, if a sale in common had been contemplated. The proper language would have been " deeds and conveyances" of the proportion " of such houses, lands and tenements as they shall so sell." In the case *Drinkwater v. Drinkwater* 4 *Mass.* 354, *Parsons* C. J. when speaking of a sale of real estate by an administrator on license, and the effect of such sale says—" And the

Hasty & ux. *v.* Johnson.

" purchaser, by virtue of his deed, may lawfully *enter into the*
" *lands sold*; and may count on his entry as a lawful seisin, and
" try his title if it is disputed." The defence, therefore, fails
as to the first tract. As to the second tract, it is important to
notice the terms of the deed from the intestate. By this he con-
veyed " all his right, title and interest in and to the falls at Horse-
" Beef so called; together with a right in the dam and booms;
" and a right to the road and landing *to haul logs as has been cus-*
" *tomary.*" By the terms of this deed, the conveyance of the
falls, dam, and booms is in fee simple. But when speaking of the
road and landing, the grantor conveys nothing more than a right to
pass over them for the purpose of hauling to and from the mills or
falls as had been customary. This is a mere easement—not an
estate in fee, or a freehold. The tenant by pleading the general
issue, admits himself to be tenant of the freehold, and to claim
and defend such an estate. Cases need not be cited to so plain a
point. As the deed in question does not convey such an estate,
it does not support the defence, or disprove the demandant's title.

But it further appears that this second tract, claimed as part
of the landing, has been distinctly known for more than forty
years, and the case finds that it never was appurtenant to any of
the mills. The deed to the tenant was given in 1804, and it does
not appear that any lumber had been laid upon this land by the
mill owners, more than fifteen years next before the trial—so
that it may be doubtful whether even the easement can be claim-
ed on what is now demanded as the second tract. However, if it
can be, the fee of the land covered by the road and composing the
landing, on the death of *George Johnson*, descended to his heirs at
law, subject to the easement, unless it has become extinguished
by *non user* or waiver. If it has not, an action may lie against
those who may disturb him in the enjoyment of it.

We cannot sustain the motion for a new trial.

*Judgment on the verdict.*