Fuller *v.* Young.

## FULLER *Judge, vs.* YOUNG.

Where the heirs of one who died intestate, supposing that all the debts had been paid by the administrator, divided the real estate among them; after which, one of them cut wood and timber on the lands to a large amount; it was *held*, in a suit against the administrator, on his bond, brought by a creditor, that it did not constitute waste in the administrator; and that he was not required to account for the value of the wood and timber cut, though such estate ultimately proved to be deeply insolvent, and though the administrator was one of the heirs, and participated in the division.

This was an action of debt on an administration bond, given by the defendant as administrator of the goods and estate of *David Young.* The bond was in the form prescribed by law.

The defendant pleaded the general issue, with a brief statement alleging a general performance of the condition.

The material facts in the case appeared to be these, *viz.:* On the 11*th of Jan.* 1827, the defendant duly returned into the Probate office an inventory of the estate of his intestate, wherein the real estate, including a *timber* tract at $1800, was appraised at the sum of $3937, and the personal at $1134. After the return of the inventory, and some further progress in the settlement of the estate, and when it was supposed that all the debts had been paid, a division of the estate of the intestate took place among the heirs, of whom the defendant was

one. The division was by deed, the grantees entering into possession of their respective shares. The timber tract was conveyed to *Jonathan Young* and others of the heirs, whom he afterwards bought out. The consideration expressed in the deed was $1600.

Subsequent to this division, *viz. Jan.* 21, 1830, *Green*, for whose benefit this action is prosecuted, commenced an action against the defendant as administrator, on a bond given to said *Green*, as Sheriff of the county of *Lincoln*, by the intestate and others. A verdict was returned therein, *October* term, 1830, in favour of said *Green*, for the sum of $2816,40 — on which judgment was rendered *May* term, 1831.

Immediately thereupon, the defendant represented the estate of the said *David Young* insolvent, a commission of insolvency issued, due proceedings were had, and a list of claims returned to the Probate office — among which was the claim of the said *Green* allowed in part, to wit, for the sum of $3467, 46.

The defendant was licensed to sell the real estate of his intestate, for the payment of debts, *Feb.* 28, 1832. An account was rendered by the defendant in Probate Court, *April* 25, 1832, by which it appeared that the timber lot aforesaid, sold for the sum of $299, 45 only, and that the gross amount of sales of all said real estate was $1255, 22. On the decree of distribution, *Green* received of his claim twenty-seven cents on a dollar.

The jury also found the following facts, *viz.:* That prior to the rendering of the verdict in the suit before mentioned between these parties, *Jonathan Young* had taken from said timber lot a quantity of wood and timber to the amount of $450. That between the time of the returning of the verdict and the rendition of judgment thereon, he cut another quantity to the amount of $200 — and that after the rendition of judgment and before the sale by the administrator, he cut a further quantity to the amount of $350; which last quantity was taken with the knowledge of the defendant. They also found that the defendant himself, prior to the representation of insolven-

cy and before the insolvency was known to him, cut wood on the lot set off to him to the amount of $50.

By agreement of the parties the verdict was to be put into form and amended if necessary, for such sum as the Court should be of opinion the plaintiff was entitled to recover; but if the Court should be of opinion, that the facts proved did not constitute a breach of the bond, then the verdict was to be amended and returned for the defendant.

*Allen,* for the plaintiff.

The defendant is guilty of a breach of the bond in this case in not administering according to law, the goods and chattels which came to his hands or the hands of others for him, after the return of the inventory. The words of the condition are, " and the same goods and chattels, *rights* and credits of the " said deceased at the time of his death, which at any time af- " ter shall come to his hands, &c. or into the hands of any " other person for the administrator, do *well and truly adminis-* " *ter,*" &c.

The defendant has been guilty of *waste* in suffering timber to the amount of $1000, to be taken from the land of his intestate and disposed of. It was a *right* of the intestate at the time of his decease — after it was cut, it was goods and chattels. The defendant might have seised and sold it, and it was his duty so to have done. The timber when severed was personal property, and should either have been seised, or sued for in trespass or trover.

The administrator had even the legal custody of the lands of the intestate, so far as to preserve them for the payment of debts. The *real* and personal both, are made assets. 1 *Maine Laws,* 227, *sec.* 1 & 2. This statute is tantamount to a devise to an executor to sell for the payment of debts. It is a legislative appropriation, but requiring *a license* to render it certain that the necessity for a sale exists, and that the preliminary steps have been taken.

At all events the timber *as soon as it was severed* from the land, was the property of the administrator in trust, to be administered according to law. Suppose an execution to have

Fuller v. Young.

issued against the goods and estate of the intestate in the hands of the administrator, might not this timber have been seised as the goods of the intestate ? 1 *Maine Laws*, 235, *sec.* 19. And if insufficient, might not the land have been levied on ? (supposing no insolvency.) And would not the administrator be notified to choose an appraiser? *Hambleton v. Cutts*, 4 *Mass.* 349. The law presumes the land and goods in his hands. The estate being insolvent, the administrator is not the less responsible, and when he himself represents it so, he is bound to take the utmost care of what there is.

The suit of the plaintiff which caused the insolvency of the estate was commenced in *Jan.* 1830, when most of the timber was standing. The administrator might then have forbidden any further cutting, having good reason to suppose that the estate would prove insolvent. But he not only neglected to do this, and to reclaim the timber after it was cut, or the avails of it, but he licensed the cutting. His deed with the other heirs to *Jonathan Young*, though it ultimately proved to be void, operated as a license to cut. He gave it at his peril. *Prescott Judge v. Pitts*, 9 *Mass.* 376 ; *Mansfield v. Patterson*, 15 *Mass.* 491 ; *Royce v. Burrell*, 12 *Mass.* 395; 1 *Dane's Abr.* 590; *Toller's Exr.* 424; 1 *Dane's Abr.* 583 ; *Walker v. Hill*, 17 *Mass.* 380 ; *Fox v. Paine*, 16 *Mass.* 129.

*Sprague*, for the defendant.

An administrator has nothing to do with the real estate of his intestate, except when wanted to pay debts. By the license from the Probate Court he acquires a mere naked right to sell. Immediately upon the death of the intestate, the heirs have a right to the possession, control and income of the real estate. And though the estate be insolvent, they have a right to the rents and profits until after a sale. These never were a part of the estate *of the intestate*. *Heald v. Heald*, 5 *Greenl.* 387 ; *Butler v. Ricker*, 6 *Greenl.* 268 ; *Henshaw v. Blood*, 1 *Mass.* 35; *Deane v. Deane*, 3 *Mass.* 258 ; *Drinkwater v. Drinkwater*, 4 *Mass.* 354 ; *Willard v. Nason*, 2 *Mass.* 438; *Gibson v. Farley*, 16 *Mass.* 280 ; *Stearns v. Stearns*, 1 *Pick.* 157.

But if the power resides in the administrator, as contended

by the plaintiff's counsel, still the exercise of it is *not covered by the bond.* *Nelson v. Jaques,* 1 *Greenl.* 139; *Nelson v. Woodbury,* 1 *Greenl.* 254; *Freeman v. Anderson,* 11 *Mass.* 192.

But if any action can be maintained, it can only be after the administrator has been *cited* to account. *Potter Judge v. Titcomb,* 7 *Greenl.* 302. The property with which the defendant is sought to be made chargeable, was either real or personal. If it was real, then by the authority of the cases cited, it is most manifest, that the defendant has nothing to do with it. If personal, then he should have been cited before action brought, on the authority of *Potter v. Titcomb.*

Again, it is contended that this action cannot be maintained for the benefit of one creditor alone. It should have been for the benefit of *all* the creditors. *Newcomb v. Wing,* 3 *Pick.* 70. If this action be sustained, the whole fruits of it go to *Green,* the plaintiff, who is not entitled to it, — the fund is a common one, belonging to *all* the creditors. *Coffin v. Jones,* 5 *Pick.* 61.

*Allen,* in reply. The cases cited by the counsel for the defendant seem to have followed the *dicta* in the English books, whose principles are the offspring of their feudal tenures, without sufficiently regarding the change wrought by our statutes, and which is referred to by the Court in the case of *Royce v. Burrell.* In England, the *personal* estate only is to be administered by the executor or administrator — the *real* descends to the heir. *There,* a creditor cannot levy on real estate an execution against the administrator. The real estate is not liable except to creditors by specialty, and then only in a suit against the *heir.* Here it is otherwise. " The administrator has the " whole control of the real and personal estate both, under the " regulation of the Probate office, so far as may be necessary " to raise a sufficient fund for the payment of debts," according to the authority of *Royce v. Burrell.*

Besides, in *Henshaw v. Blood,* the only question necessary for the Court to decide was, whether an administrator is bound to *inventory* real estate. The case of *Dean v. Dean,* decides only that an administrator could not sell the real estate for any other purpose than to *pay debts.* The case of *Drinkwater v.*

*Drinkwater*, does not decide the points raised in this case. The case of *Gibson v. Farley* has no application to this, because the plaintiff is not seeking the ordinary rents and profits, but to charge the administrator for *waste*. *Heald v. Heald*, has no application for the same reasons.

MELLEN C. J. delivered the opinion of the Court.

This seems to be an action of a new impression, and an attempt to extend the construction of the condition of the bond, on which the action is founded, beyond the limits established by any decided cases to which our attention has been called in the argument of the cause, or which have fallen under our observation before or since. By the report it appears that the defendant duly caused an inventory to be made and returned to the Probate office, of all the estate of the intestate, including the lots of land on which the several parcels of timber and cordwood, mentioned in the verdict, were cut, after the intestate's decease. The present action is one of the consequences of the unexpected insolvency of the estate, occasioned by the recovery of a judgment to a large amount, by the said *Green*, against the defendant as administrator. Prior to the commencement of that action, the heirs had made an arrangement among themselves as to the division of the real estate, and entered into possession. It further appears, that as soon as this Court had rendered judgment in the above-named action, a commission of insolvency was issued by the Judge of Probate on the representation made by the defendant, on which due proceedings were had and a final decree of distribution passed. It seems that timber of the value of $350 was cut on the timber lot *after* the above judgment was rendered, *with the knowledge* of the defendant: and about $50 were cut *by the defendant himself*, before the insolvency was known. On these facts is the defendant liable on his bond ? At the time the intestate died, the trees in question were all standing on the land and *then* were a part of the *freehold*, and thus were inventoried as a part of the land. They never *could*, and certainly never *did* become *personal* property until they were severed from the freehold. This principle is undisputed. The condition of the

Fuller *v.* Young.

bond is, after describing the property required to be inventoried, " and the same goods and chattels, rights and credits of " the said deceased, *at the time of his death*, which at any time " after shall come to the hands and possession, or into the hands " and possession of any other person or persons for the said (ad- " ministrator) do well and truly administer according to law." The counsel for the plaintiff contends that as the trees, *when standing*, were the property of the deceased — and *real* estate, that they were his *personal* property, as soon as they were felled and severed from the freehold : still they were not *personal* property of the intestate *at the time of his decease ;* — is the defendant then accountable on his bond for its amount ?

It is urged that he should have seised the timber and cordwood as soon as they became personal property, by a severance from the freehold ; and that his neglect so to do, was unfaithful administration and a breach of the condition of his bond. By ascertaining the *rights* of the defendant, in his character of administrator, in the circumstances above stated, we can most readily decide what were his *duties* and *liabilities*.

It is a familiar and established principle of law, that when a man dies seised of real estate and intestate, it descends to *his heirs*, subject to the payment of his debts, if there be a deficiency of personal assets. His administrator has no right to enter into the lands or take the profits. He has *no interest* in them, but a *naked authority* to sell them on license to pay the debts. An administrator has no interest in the real estate, unless mortgaged to the intestate, he has no right of entry into it, and cannot bring any real action to recover seisin and possession. The foregoing principles are distinctly laid down by *Parsons C. J.* in *Drinkwater v. Drinkwater, Admr.* 4 *Mass.* 354. And in *Nason v. Willard,* 5 *Mass.* 240, the same Chief Justice says, " The " executor or administrator has in *no case, virtute officii*, a right " to the possession of the deceased's lands." — If they are wanted for payment of debts, the administrator may sell them, when in possession of a devisee or of an *heir*, his heirs or assigns ; — see also *Gibson & al. v. Farley & al.* 16 *Mass.* 280. These principles are firmly settled. Nor can an administrator maintain an action, in his official capacity, of trespass *quare*

*clausum fregit.* Such actions must always be brought by the heirs and by them only. On the death of the intestate, in the case before us, all his lands and real estate immediately descended to his heirs. They had a right *immediately* to enter into possession; such possession was lawful, and such a division as they made among themselves, subject to the right of the administrator to sell them to pay the debts, when duly licensed for the purpose: and they had a right peaceably to hold such possession, until their conditional estate was defeated and taken away by such sale. What more then could the defendant have done than he has done?

As to the timber and wood cut on the timber lot, it was not cut by the *defendant* or his *consent:* though a part of it was with his *knowledge;* but how could he have prevented it? He had no power to do any thing more than take immediate measures to obtain authority to sell the land; and all this was regularly done, and the land sold. The trees descended with the land, and as a part of it, to the heirs; and a portion of them was appropriated by them before a sale was made, or even suspected to be necessary. Such was the fact also with respect to the trees and wood cut by the defendant himself, before the estate was supposed to be insolvent. It has been settled in the above cited case of *Gibson & al. v. Farley & al.* and in *Heald v. Heald,* 5 *Greenl.* 387, that in case of an insolvent estate, the creditors are entitled only to the estate of which the intestate *died seised;* and not to the *rents* and *profits* after his death; for these belong to the *heirs.* In the above cases, however, the Court were deciding in respect to the *annual rents and profits,* which had no *existence, as property, in any form,* during the life of the intestate, as the trees had in the case under consideration; though not as *personal* property. Whether any distinction can be made between the two cases, has been a subject of interesting inquiry, in view of those consequences which might, in certain circumstances, be productive of manifest and extensive injustice. If, for instance, the heirs at law of a person who dies seised of a tract of woodland, but insolvent, can strip the land of all its wood and timber, before an administrator can so far proceed in the settlement of the estate

Fuller *v.* Young.

as to procure a license to sell it for payment of debts ; or if the administrator himself, after the decease of the intestate and the return of an inventory, including the land supposed, should cut down the timber and wood and appropriate the same to his own use ; and, if in neither case the creditors can avail themselves of the value or proceeds of such timber and wood, because, in the former case, the administrator has nothing to do with *real* estate of an intestate, except to sell it under license, and because the intestate did not die possessed of it as *personal* estate ; and because, in the latter case, it was not personal estate, until he made it *such*, after the intestate's death ; if, we say, these principles are legally founded, the consequences may prove serious to thousands : for though, in the latter case, the *heirs* might sue the administrator for the trespass and recover damages, still, such recovery *might*, and generally *would* be of no use to the creditors. We suggest these ideas and present these views, as worthy of some consideration, and also as calculated to create some perplexing doubts and difficulties. But in this cause we do not feel it necessary to give any opinion on either of the supposed cases : for if the administrator in the present case, *is not* liable on his bond to account for the value of the timber and wood, because the *land* was duly inventoried and sold, and the proceeds of the sale accounted for ; and because such timber and wood were never the *personal* estate of the intestate, then it clearly follows that the action cannot be maintained. On the contrary, if he *is* liable to account for the value of such timber and wood, according to the true construction of his bond, as property that has since the return of the inventory come to his hands and use, in the shape of *personal* property, and of which the creditors have received no advantage from the inventory, still, the defendant cannot be held to account, until he shall have been cited by the Judge of Probate for the purpose : as this Court has decided in the case of *Potter, Judge v. Titcomb*, 7 *Greenl.* 302. In that case the Court adjudged the replication insufficient, because the plaintiff in assigning a breach of the condition of the bond, did not allege that, before the commencement of the action, *Titcomb* had been cited by the Judge of Probate to render an account of

the property which was stated to have come to his hands and for which he had not accounted. In such cases our statute expressly requires a citation as a necessary preliminary to the maintenance of an action on the bond. Thus it appears that, *quacunque via data*, the action cannot be sustained ; and according to the terms of the report, the verdict is to be so amended as to stand a verdict for the defendant.