* Parsons, C. J.
The plaintiff has sued a writ of [*357] entry against the defendant, to foreclose a mortgage made to him by Prince, the intestate. On the trial, he produced the mortgage deed, the execution of which is agreed. The defence is, that the mortgage is not bona fide, nor for valuable consideration, but made to defraud the creditors of the mortgagor. And the question submitted is, whether in this case it is competent for the defendant to make this defence.
A conveyance to defraud creditors is good against the grantor and his heirs, and is void only as to creditors. For neither the grantor, nor his heirs claiming under him, can ova 1 themselves of *314 any fraud, to which the grantor was a party, to defeat any conveyance made by him. The intention of the law, in establishing this principle, is effectually to prevent frauds, by refusing to relieve any man or his heirs from the consequences of his own fraudulent act. If creditors have been injured by the fraud, they are entitled to relief; and as to them a fraudulent conveyance is void.
When the estate is not insolvent, a creditor may have the benefit of the estate fraudulently conveyed in two ways. He may recovei judgment against the administrator, and may extend his execution on the estate; or the administrator, having obtained license, may sell the estate at public auction, and out of the proceeds may satisfy the creditors. But the creditors of the intestate, Prince, are not affected by this mortgage, unless there is a deficiency of personal assets. The evidence to prove a deficiency of personal assets is to be derived from an administration account settled by the defendant July 8, 1807, and from his claim to be allowed the costs of this suit. In looking into the account settled, it appears that, after all the debts are paid, there is a balance of personal assets in his hands amounting to 159 dollars 97 cents. To this sum must be added 17 dollars 40 cents, the charges for dividing other real estate. The judge has also allowed him the very extraordinary claim of 172 dollars 31 cents, for the expenses of lawsuits; Í say extraordinary, for the estate does not appear to have derived any benefit from them, as no judgments recovered are credited, while the estate is charged with 89 dollars 3 cents, due on report of referees.
[ * 358 ] * In any view, therefore, that can be taken of this account, it is most manifest that the intestate left personal estate more than sufficient to defray the charges of administration, and to pay all his debts. And as 9 dollars 25 cents are credited for the income of real estate, and there is also a charge for partition, it must be presumed that the intestate left real estate not encumbered by this mortgage.
From these facts, we must necessarily infer that the mortgage cannot, in law, be deemed fraudulent against creditors, unless the defendant has a lien on the lands mortgaged for the costs of this suit. It may be proper, therefore, to consider the connection an administrator has with the real estate of his intestate.
At law, the lands descend to the heir, subject to the payment of debts, if there be a deficiency of personal assets. The administrator frequently enters on the lands, and accounts for the rents and profits in the Probate Court; and this practice may not be inconvenient to the heirs. For the profits become a part of the fund, if wanted for the payment of the debts; and if not wanted, they form a part of the distributive shares of the personal estate. But in law, the ad *315 ministrator has no right to enter into the lands, or to take the profits. He has no interest in them, but a naked authority to sell them on license to pay the debts, when the personal estate is insufficient, (a) And lands not being liable for the payment of debts at common law, they are made liable by statute, which does not extend the liability to the defraying the charges of administration. The personal estate alone is a fund for the payment of those charges. It is true that when lands, recovered by an administrator by foreclosing a mortgage, or taken in execution to satisfy a judgment in a personal action, are sold on license for the payment of debts, the proceeds of the sale are considered as personal assets, and liable for the charges of administration, because those lands were received in satisfaction of personal assets belonging to the intestate at his death. Also when lands, of which the intestate died seised, are sold on license for the payment of debts, the Court authorize the sale of lands enough to defray the charges of the sale, and of accounting for the * proceeds. Because the statute giving [ * 359 J an administrator a power to sell lands on license, the Court granting the license must, by a reasonable construction, have authority to indemnify him in executing the power. So also a judgment creditor may levy his execution for his costs, as well as his damages, on the land.
But the administrator having no interest in the lands of the intestate, unless they have been mortgaged to him, and having no right of entry, he cannot bring any real action to recover seisin or possession of them. He cannot count on the seisin of the intestate, for he derives no interest, in the lands from the intestate by virtue of his administration. Nor can he count on his own seisin, for his entry on the tenant in possession will be tortious. (b)
If the lands are liable to the payment of the intestate’s debts, he may lawfully sell them on license, whether they are in the possession of the heir, or of his alienee or disseisor. For no seisin of the heir of his alienee, or of his disseisor, can defeat the naked authority of the administrator to sell on license. Thus also when an authority is given by the testator to his executor to sell his lands for the payment of his debts, the executor may sell, notwithstanding the death or alienation of the devisee; and for the same reason, notwithstanding his disseisin. And the purchaser, by virtue of his deed, may lawfully enter into the lands sold, and may count on his entry as a lawful seisin, and try his title, if it be disputed, (c)
*316 If the lands of the intestate are wanted for the payment of his debts, as the administrator has no cause to recover the possession by a suit at law, so to allow real actions to be maintained by him would be mischievous. If the deficiency of personal assets amount to 50 dollars, how much land may he demand of the alienee of the heir, if he is in possession ? or by what description ? shall he demand a large farm, worth 5000 dollars ? and if he cannot recover the whole, what part shall he recover ? If he recover the whole, after land sufficient to pay the debts and charges of sale is sold, how is the defendant, who has lost his land by a judgment at law, to regain his seisin of the remainder ? but if the [ * 360 ] administrator proceed, without action, to sell, the owner of the land may, by becoming the purchaser, protect his own title; or if others will give more, enough may be sold, and his title to, and possession of, the remainder will continue undisturbed.
It may be objected that, if the purchaser at public auction conceives that he purchases not only the land, but a lawsuit, he will offer a much less sum, and cause more land to be sold. This is true; but it will be the folly of the owner of the land, by setting up his title as adverse to the sale, to lose more of his land; and if the administrator had no authority to sell the land, there is no reason that he should charge the estate with the expenses of a fruitless lawsuit.
After explaining the connection of the administrator with the lands of his intestate, we must infer from it that the administrator cannot defend in any real action brought against him as administrator, by any person claiming as a purchaser from the intestate; whether the purchase be bond fide, or fraudulent as to creditors. A recovery against him cannot prejudice the creditors; for their right to levy their executions on the land, and his right to sell on license, remain the same after as before the recovery.
As the defendant has, therefore, no claim on the lands mortgaged, to reimburse him his expenses in defending this action, the creditors are not in any manner interested in the event of the suit; and for the benefit of creditors only can the conveyance of the mortgagor be shown to be fraudulent; for as to all persons claiming as heirs to him, a conveyance cannot be impeached by a fraud, to which the grantor was a party. The expenses of this defence are unnecessary, *317 and imprudently incurred; and so far are they from a charge on -the intestate’s land, that the administrator ought, in equity, to pay them out of his pocket, and not charge them against the estate. (d)

Defendant defaulted.

 [Dean vs. Dean, 3 Mass. Rep. 258. — Mitchell vs. Lunt, post, 654. — Ed.]

[Gibson vs. Farley, 16 Mass. Rep. 280 —Hathaway vs. Valentine, 14 Mass. Rep 600. But see Rev. Stat. c. 71, § 11,12,13.—Ed.]

 [Wyman vs. Brigden, ante, 150.—Bigelow vs. Jones, post, 512. — Boylston vs. *316 Carver, post, 598. — Mitchell vs. Lunt, post, 654. — Gore vs. Brazer, 3 Mass. Rep. 523 — Scott vs. Hancock, 13 Mass. Rep. 162. — Willard vs. Nason, 5 Mass. Rep. 240 Hays vs. Jackson, 6 Mass. Rep. 149. — Ed.]

 [Hardy vs. Call, 16 Mass. Rep. 530. — Ed.]