## A. B. CALHOUN *versus* DAVID CABLE, A. H. STOWELL, and CALEB CROSS.

### March 4, 1841.

H. Chipman, for the demurrer.
H. N. Walker, contra.

[INDORSEMENT]

Sup. Court 1 Circuit.

Calhoun
  vs.                    } In Chancery
Cable et al

Dem<sup>r</sup> to Bill—
Mem° bill-argument.
& opinion—

[STATEMENT]

Sup. Court 1 Circuit.

A. B. Calhoun
      vs.               } In Chancery.
David Cable et al

The Bill sets forth

1. That on the 26 March '33 Cable sold to Plff a certain lot
   of Land of 40 acres, and gave him an agr<sup>t</sup> in writing—
   The consideration $250., $100 to be paid down, and the
   bal<sup>s</sup> in 90 days—Cable to give a deed when the whole
   am<sup>t</sup> was paid, or as soon thereafter as Plff should direct—
2. That Plff paid the whole amount of the purchase money
   according to the agr<sup>t</sup>—but did not take a deed, as he had
   full confidence in Cable being his brother in law—
3. That Plff took poss. of the land, and with the knowledge
   and consent of Cable, and expended 7 or $800 thereon
   in building, and improving the land—
4. That Plff and Peter N. Girardin in the Spring of '34 be-
   ing in partnership—procured Cable and A. H. Stowell
   to indorse for them in their Co business 2 notes for

$309.49 each pay$^e$ at the Bank of Michigan, dated the 16 Ap. '34, one pay$^e$ in 6 and the other in 8 months—

5. That in the fall of '34 some of the Creditors of Plff and Girardin becoming alarmed, they made an assign$^t$ of of their joint debts, effects and stock, to the Stowell and Garry Spencer, in trust to secure the said Stowell and Spencer in the first instance, and also the said Cable and others for their liabilities as indorsers—, and others to whom they were indebted—dated 3 Nov '34

6. That to secure a retreat for himself and family, and to prevent a sacrifice of his individual property, for the pay$^t$ of the Copartnership debts, in case of attempts by said indorsers and creditors to enforce pay$^{ts}$ at an earlier period than would have been practicable to raise funds out of the joint effects assigned—The Plff upon the suggestion of Stowell, was induced, for a mere nominal consideration, to assign all his right and interest in the said written agr$^t$ of Cable to convey the said land to said Stowell—That Stowell took the said assign$^t$ in strict trust and confidence for the sole benefit of Plff.—and solemnly promised that he would use the instrument assigned in such manner as Plff should direct, and particularly that it should be so used that in case the debts and effects of Plff and Girardin should be insufficient to pay the said notes indorsed by Cable and Stowell, the said Cable and Stowell should be fully indemnified out of the private property of Plff—That it was agreed between Plff and Stowell, and it was the only object Plff had in view in making the assign$^t$ of the instrument to Stowell, to get an extension of time for the pay$^t$ of said Cable and Stowell, for any advances they might be under the necessity of making upon their liabilities as such indorsers— and the said Stowell agreed to act as trustee that object in

virtue of the said assign[t] of said agr[t] to him—All of which matters the Plff informed the said Cable—and put him upon his guard, previous to the assign[t] of the said contract by said Stowell to said Cable as hereinafter mentioned—

7. That the said note indorsed by Cable and Stowell, pay[e] in *6 months* was taken up after it became due, and by some arrangement between them, one half of the note was understood to have been paid in some way by Cable, and the other half by Stowell, as assignee of Plff and Girardin—And that Plff has reason to believe, altho he has not rec[d] a strict a/c of the same, that the funds belonging to said trust in the hands of Stowell, are amply sufficient for the pay[t] of the said note, and said Cable will be fully indemnified and paid for his advances on a/c of said note out of said funds.

—That Stowell has actually credited himself and said Spencer with the pay[t] of said note, as Trustees of Plff and Girardin.

8. That in Feby '35 Plff had a conversation with Cable in which C. intimated to Plff that Stowell was about to apply the interest in the contract assigned to him by Plff, to his own private use, and that he intended to get the land for nothing—And the said Cable told Plff, that as his contract for the sale of the land was made with Plff— he was not bound to make a deed to Stowell, and expressly agreed to make a deed to Plff and take back a mortgage to secure him for pay[ts] on said notes as indorser —and agreed to give Plff one year in which to pay the mortgage—That in pursuance of this agr[t] Cable and Plff went to a Lawyer, to whom C. gave directions to prepare the deed and mortgage, which deed and mortgage were duly prepared and dated in the 23 Febry '35. That

the mortgage was for $470, which was to indemnify the said Cable as well for the full am$^t$ paid by him on the first note, as for the whole am$^t$ of the liability of the said Cable & Stowell on the Second note, then outstanding, and which Cable agreed to take up in consideration of the said mortgage—

9. That Plff executed said mortgage and delivered the same together with the deed so prepared to Caleb F. Davis, to be taken to Cable—

That Davis delivered the same to Cable, who with his wife executed the said deed and delivered it to said Davis

10. That Plff has always been, and still is ready under the direction of this Court, to pay and satisfy the sum so secured by the said mortgage to Cable—

11. That soon after Cable executed the said deed and while it was in the poss. of Davis, the said Cable, without the knowledge or assent, of Plff, entered into negotiation with one Caleb Cross for the sale of said Land to Cross —That Cross being well informed of the Plffs rights to the land, and that he was in poss. of the same, refused to purchase, unless Cable would take up the agr$^t$ of Cable to Plff

12. That thereupon Cable applied to Stowell to give up to him said agr$^t$—and that Stowell did deliver up the agr$^t$ to Stowell [Cable], and that in consideration thereof, it was agreed between them, that Cable would assume the pay$^t$ of one or both of said notes, that Cable should take up one or both of said notes, and deliver the same to Stowell after Cable's name should be erased therefrom

—(Setting forth written agr$^t$ of Stowell to this effect,
—That Stowell assigned the said agr$^t$ to Cable without the knowledge or assent of Plff—)

13. That the notes have not been given up to Plff, or cancelled, but are still outstanding against him.

14. That Stowell has treated the said ·notes as his private property—And has turned out, and actually passed away, one or both of said notes in pay$^t$ of his private debts—and that Plff is still liable on. said notes—

15. That Cable clandestinely obtained from Davis, and without his knowledge or assent, the said deed given by Cable to Plff, and exhibited the same to said Cross who had a full knowledge of all the circumstances,—That Cross purchased the said land of Cable who executed to him a deed therefor dated the 12 June '35—but which was not delivered until Sept. '35—

That the consideration paid by Cross to Cable on such purchase was $600—That that sum was greatly below the value of said land.

—That Cross took poss. of the said land and still retains the same—

16. The Bill concludes with prayer for relief—

—1. That the deed from Cable to Cross be cancelled and given up to Plff.—

2. That Cable be compelled to perform his agr$^t$ with Plff upon such conditions as the Court shall deem proper &c.

3$^d$ That the Defts be decreed severally to make and to execute all necessary receipts and releases and assurances—and 4th to account to Plff and pay & satisfy him for any monies which shall be found due Plff from the Defts or either of them—

And for such other & further relief .&c &c.

To this bill all the Defts have demurred generally—

1. To the equity of the Bill, &

2. Multifariousness—

1. As to the Equity

—The Defts in support of their demurrer contend.

    1. That the assign[t] of the contract for the land, to Stowell—was made to secure the property from the reach of Plffs Creditors—

        (a)—Bill says to secure a retreat [for] from himself and family—

        (b)  A mere nominal consideration—

1 Story, Eq. 364
7 Johns. R. 163.
16 id.
12 Ves. 103.
4 Mass. 354
Roberts fraud. Con. 593, 4.
Yelverton 197
4 Cow. 207. 216.
8 id. 406.
11 Wheat. 213
1 Cowan. 171.

That being a voluntary conveyance, it is good between the parties—Altho void as to creditors—

All showing that whether voluntary or fraudulent as against Creditors, it is nonetheless good as between the parties

—Plff should have set out the consideration, that the Court might see what it was &c.—not having done so the Court will presume that the consideration was sufficient—

2 Kents Com. 365. Valuable consideration—what—

    —Benefit to the promissor, or trouble or prejudice to the promissee—

    —The consideration as stated in Bill is vague & uncertain.

        (c)—But the Bill states that the contract was assigned to Stowell as collatteral security to pay certain notes indorsed by Cable & Stowell in the event that the funds arising from the stock and effects assigned for that purpose by Plff and Girardin, should not be sufficient—This was to protect the indorsers—

Why does he then complain.

—If the assign<sup>t</sup> of the contract was made to Stowell in trust for this purpose——Stowell had a right to convey, whenever the contingency required it——It was optional with him to wait or not——

—Plff cannot take it away, or ask to have it taken away—and the only supervision which a Court of Equity would take of the matter, would be to see that the trust was carried into effect—That the collattery security was applied according to the agr<sup>t</sup> of the parties—

4 Kents Com. 302
1 Equity Cases Abridg. 93
11 Ves. 12. 22

—The Bill does not ask to have the property applied to the purpose for which it was assigned—but, on the contrary, without tendering the am<sup>t</sup> of the notes paid by Cable, seeks to compel Cable to convey the land to Plff.

(d.) In addition to all this, the Bill sets out, That the *Leading* and ONLY object of the assignment of the contract to Stowell, was to get an extension of the time for the Plff to repay Cable and Stowell what they should pay on the two notes—

—And Bill states that Plff informed Cable of the assign<sup>t</sup> to Stowell and "put him on his *guard*." against bargaining with him &c

—Clearly intending to prevent Stowell deriving any advantage from the assign<sup>t</sup> to him—as the assign<sup>t</sup> only could be available to Stowell by obtaining from Cable a deed of the land under the contract—

Bill States

1. That a mere *nominal* consideration was given by Stowell

78

on the ass$^t$ and that S. rec$^d$ the assign$^t$ for the benefit of Plff—and that S. was to hold the contract, subject to Plffs direction—

2. That the object of the assign$^t$ was to secure Cable and Stowell for pay$^{ts}$ made and to be made by them on the 2 notes in case certain funds should not be sufficient for the purpose—
and

3. That the *leading* and *only object* of the assign$^t$ was to get further time for Plff to repay C. & S. for the am$^t$ paid by them on the notes—

Which of these 3 considerations here mentioned is the true one?—2 out of the 3 must be false.

—Plff not only intended to cheat his creditors, but also his confidential friend—

—The Bill next sets forth an agr$^t$ made by Cable with Plff. in Feby '35, *several months after the assign$^t$ to Stowell*, by which Cable agreed to make a deed to Plff—and states that the deed was accordingly made and put into the Hands of Davis, together with a mortgage back by Plff to secure Cable for payment of the notes—

> —Now by Plffs showing what equitable interest in the land had Cable?
>
> By the Bill itself this was clearly an attempt to defraud Stowell of the benefit of the assign$^t$ as a collatterál security &c—

Stat. '33  —But the deed was never delivered to Plff—
P. 342—  and as there was *no mem° in writing it is within the Stat. of frauds*—

> —The Relief prayed is that the deed from Cable to Cross may be cancelled—

·That Cable be compelled to perform his agr<sup>t</sup> with Plff, upon such conditions &c In other words his assign<sup>t</sup> to Stowell be Cancelled, and that the property be conveyed to Plff—

But if the Bill shows any equity to entitle Plff to Relief

2. It is bad for *multifariousness*

Storys Com. on Eq. Pleading. p. 224 §271—definition—

id. p. 226.
Cooper Pl. 182
Mitf. Pl. 181
18 Ves. 80
2 Masons R. 181.—

"The improperly joining in one bill distinct matters, and thereby confounding them, as for example, the uniting in one bill perfectly distinct matters against several defts in the same bill" &c

2 Sch. & Lefr. 371.
Story Com. Eq. Pl. p. 226—
(id. 231)

"So if a Bill be bought for a specific performance upon a sale of an estate, it would be multifariousness to include in such a bill a prayer for relief against third persons who should claim an interest in it, and who are unconnected with the sale which is sought to be inforced"—

—If the Plff seeks to recover upon his contract made with Cable in Feby '35—then the bill is bad, because Stowell & Cross who had nothing to do with the sale, are made parties—

—If he seeks to recover on the ground that Stowell is a trustee, and ought to account for his doings as such, then it is bad as Cross never had any thing to do with him in any manner—neither paid him money or received any title from him,—neither had Cable any connection with Stowell that would make him liable.—

—The same result would flow if Stowell violated his trusts, as Cable and Cross could not be made to account.—

If he seeks to recover the land upon the first agr$^t$ by Cable, then it is bad for multifariousness, as Cross, who had nothing to do with that contract, is made a party—

In support of the Bill the Counsel for the Plff. contends—That the objections of Defts to the equity of the Bill are not warranted by the case made by the Bill—

—Plff does not seek to have the assign$^t$ to Stowell rescinded —He seeks to enforce it, according to the agr$^t$ of the parties—

He charges Stowell with a breach of trust in disposing of the contract assigned, before the happening of the contingency, upon which alone he had any right to dispose of, by the express terms of the assign$^t$—alleging that the proceeds of the copartnership effects were amply sufficient to pay the notes indorsed by Cable and Stowell,—And therefore instead of seeking to avoid the assign$^t$—He asks this Court to supervise the doings of the trustee, and that he may be compelled to execute the trust—

This is certainly apparent upon the whole face of the bill—

2. It is also objected by the Defts, that Plff intended by the assign$^t$ to Stowell to defraud, or delay his creditors, and that this design is expressed in the bill—

—But this objection has been already answered, on the ground that Plff does not seek to rescind the assign$^t$—but to enforce its terms and the trust connected with it—and therefore it does not lie with Stowell to urge this objection, when he is ask[ed] to execute the trust—

—Besides the interest assigned, is not such to subject the Plff to such a charge—

1 Story, Eq Com. 361.—"To make a voluntary conveyance *property* which would be liable to be taken in Execution for void as to Creditors, it is indispensable that it should transfer the pay$^t$ of debts"

The assign$^t$ was not absolute, but conditional coupled with a trust—

In making the assign$^t$ to Stowell as a collatteral indemnity, Plff merely preferred two creditors to others, if indeed he had any others—

1 Story, Eq. Com 370.
Id. 364.                          And a debtor may do
11 Wheat. 48 or 78.               this without fraud—
5 Term R. 424—Lord Kenyon—

1 John Ch. R. 119.—"Collatteral securities to creditors are considered as trusts, for the better protection of their debts, and equity will see that their intention is fulfilled."

2 John Ch. R. 283

15 John Ch. R. 571—Assign$^{ts}$ in trust with a power of revocation is considered fraudulent *only as* regards judg$^t$ creditors, or such as are taking measures to obtain pay$^t$ of their debts.

—So far therefore, is [as] the charge of fraud is concerned, it is directly against the facts stated in the bill.— The assign$^t$ was meritorious on the part of Plff—to secure his indorsers, in the event the co-partnership fund should prove insufficient to pay and indemnify them &c.

—As to multifariousness—

—The Deft are properly made parties to the Bill, and it would have been demurrable if either had been omitted—

They have each participated—

1. Stowell in disposing [of] the contract assigned in breach of his trust,

2. Cable, with a full knowledge of the object of the assign$^t$, in obtaining the contract assigned, and in executing a deed to Cross of the premises —also in violation of Plff rights—

3. Cross in taking the deed, having a full knowledge of all the equities of the Plff—

—As to the Relief prayed for—

—Plff not limited to the special relief prayed but under the general prayer for relief, may have such specific relief as his case calls for—

*2 Madd. Ch. 138*—"the practice now is to pray particular relief, though if the particular relief prayed by the bill cannot be given exactly as prayed, the Court will assist the particular prayer under the general prayer; but relief *inconsistent* with the specific relief prayed, cannot be given under the general prayer."—

—Mem° of Opinion—

1. Ground of Dem<sup>r</sup> Want of Equity in the Bill.
    1. That the assign<sup>t</sup> of Contract for Deed, by Plff to Stowell, was fraudulent, intended to delay or hinder creditors of Plff

—I think the allegations in the Bill do not show a case which will sustain this objection—

—There is a vagueness and looseness in that part of the bill setting for[th] the assignment and the reasons and inducement prompting the Plff to make the assignment—It speaks of securing a retreat for Plff and his family—about a mere nominal consideration—

That Stowell was to hold it subject to Plffs directions— all which upon the first perusal seems to look as though the Plff was putting his property beyond the reach of creditors—

But it expressly states that it was assigned for the purpose of indemnifying Stowell and Cable for their liabilities as his indorsers on the notes, in the event that the joint effects

of Plff and Girardin should not be sufficient for that pur-
pose—

—And besides the Plff does not seek to set aside the assign^t—

He charges that the contract was assigned in trust to
Stowell for a particular purpose—and that S. has violated
that trust, by disposing of the contract in a manner and under
circumstances not warranted by the terms of the assign^t—
That the contingency had not happened upon which S. might
have disposed of the contract, to wit, the insufficiency of the
funds arising from the joint property and effects of Plff &
Girardin to meet the liabilities of Cable & Stowell as such
indorsers—And he avers that those funds were sufficient for
that purpose—

Here then is a direct charge of misapplication of the
equitable interest assigned.

—And the Plff seeks the aid of the supervisory power of this
court, to compel the execution of the agr^t between the parties
—and to correct a violation of the trust by Stowell—

—And that such a power is among the ordinary powers of a
court of Equity will not be doubted—

Upon this part of the bill I think there is enough alleged
to show an Equity between the Plff and Stowell.

The Bill then alleges that Cable having a full knowledge
of the object of the assign^t and of the understanding and
agr^t between Plff and Stowell respecting the use and applica-
tion of the equitable interest assigned, procured the contract,
so assigned to Stowell, to be assigned to him, for the purpose
of destroying all evidence as to the equitable interest of Plff,
in the lands agreed to be conveyed by said contract to the
Plff—

Cable had thus taken up his own obligation to convey—and
then conveyed the land to Cross.

—Upon this alleged participation with Stowell in the breach

of trust by Stowell, and the getting up his contract to convey the land to Plff—

—And then conveying the land to Cross—there is an equity between Plff and Cable—

The Bill further alleges that Cross, at the time he purchased the land and rec{d} the deed from Cable, had full knowledge of all the equitable interest of Plff in the premises—

This allegation, upon its face, subjects Cross to the equitable claim of the Plff—

I think, therefore that the first ground of Dem{r} that there is no equity in the Bill, is not sustained—

And as to the 2{d} ground, *Multifariousness*—I think, that, for reasons already given, the Defts are all properly made parties, to the suit—The Bill claims a general right, that the legal title to the premises be delivered up to be cancelled, and that the same be conveyed to the Plff upon terms—And although the defts have each separate and distinct interests, each of them is interested in the general claim—And are therefore properly made parties—

Dem{r} overruled—