WASHINGTON GILBERT, judge of probate, *vs.* GEORGE W. DUNCAN *et als.*

Sagadahoc, 1875.—May 31, 1876.

*Executors and administrators.*

Where an estate is solvent, an action cannot be maintained against the principal and sureties on the administration bond by reason of the administrator's neglect to settle his account, until he has been cited before the judge of probate for that purpose.

The commission of waste or trespass by third parties, with the consent of the administrator, upon the real estate of the deceased, will not constitute a breach of the sixth condition of the administrator's bond required by R. S., c. 64, § 19, unless the estate has been represented insolvent to the judge of probate.

A paper subscribed by the administrator, and found on the files of the probate court, stating that there is due from the estate to A. B., a certain sum, that there is no personal estate, and that the real estate is insufficient to pay A. B.'s claim, does not amount to such representation, unless it also appears that such paper was presented to the judge of probate.

The condition in an administrator's bond, to administer according to law all the goods, chattels, rights and credits of the deceased, is not broken by the administrator's suffering a fraudulent and collusive judgment to be rendered against him, where there is no personal property upon which the execution can be levied, and it is in fact levied on the real estate of the deceased.

The failure to render a true and perfect inventory of the rights and credits which have come to the knowledge of the administrator is a breach of one of the conditions of the bond; and a suit can be maintained for the benefit of the estate by special permission of the judge of probate first had and obtained, therefor, although the administrator has returned an imperfect inventory, and has not been cited before the probate judge to add to it, or to account for the items omitted.

ON EXCEPTIONS.

DEBT on a bond conditioned for the faithful administration of the estate of Jonathan H. Crooker, of whom the plaintiffs in interest are the legal heirs. To the plea of performance there was a reply assigning breaches and a traverse thereto by the defendants which the plaintiff joined. After the evidence for the plaintiff was out, the presiding justice ordered a nonsuit, and the plaintiff alleged exceptions.

*F. Adams*, for the plaintiff.

*T. H. Haskell*, for the defendants.

BARROWS, J. This is an action upon a probate bond given by Duncan, and the other defendants as his sureties, to secure the faithful performance of his duties as administrator upon the estate of Jonathan H. Crooker.

It is commenced for the benefit of the estate under the express authority of the judge of probate. The bond is in the form required by the statute, (R. S., c. 64, § 19,) and the defendants plead that Duncan has well and truly kept and performed all the covenants and conditions thereof; to which the plaintiff replies alleging waste and unfaithful administration in this, that he fraudulently and collusively allowed one Charles Crooker, to obtain a judgment against him as administrator for about $3500 upon a

claim which he knew to be exorbitant, unjust and illegal, and then permitted the real estate of the deceased to be set off upon the execution issued on the same judgment, for about $2500, or one-half of its real value,—that there were rights and credits to which the said Jonathan H. Crooker was entitled, as the said Duncan well knew, (to wit, a right to a life maintenance out of the estate of Hannah Crooker, under the provisions of her will of which the said Charles Crooker was executor,) which he did not make a true inventory of, nor use to offset the fraudulent and unjust claim of Charles Crooker, as he might and ought to have done,—and that there were other rights and credits, growing out of the rents and profits of said Jonathan H. Crooker's estate, which were in arrears at the time of his death, of which no inventory was returned, that he suffered Charles Crooker to commit waste and trespass upon the estate of the deceased after a representation of insolvency, and that he never rendered any account of his administration.

Upon these alleged breaches, the defendants in their rejoinder tender an issue to the country denying the fraudulent collusion with Charles Crooker in the matter of the judgment, or that the deceased had any such right under the will of Hannah Crooker in her estate, or that there were any rents or profits of his estate in arrears at the time of his death—averring that the administrator did return a true inventory—denying that Jonathan's estate was ever adjudged insolvent, or that the administrator suffered Charles Crooker to commit waste and trespass thereon, and averring that he did render an account of his administration.

In substance four breaches are alleged in the replication.

I. A breach of the condition to administer according to law all the goods, chattels, rights and credits of the deceased, committed in the alleged collusion with Charles Crooker, in respect to the procurement of a judgment by him against the estate on a groundless claim.

II. A breach of the condition to return a true inventory in the matter of rights and credits, as above specified.

III. A breach of the condition to render an account of his administration.

IV. Failure to account for thrice the amount of waste and tres-

pass committed with his consent after representation of insolvency.

Very plainly, we think the plaintiff failed to establish the third alleged breach. It is conceded that Duncan has never been cited to account by the judge of probate. Upon the face of the inventory which he returned, and supposing it to be a true and perfect inventory, there was nothing in his hands to account for. That there cannot be a breach of this condition until the administrator has been cited to account by the judge of probate has long been considered settled law in this state. *Nelson* v. *Jaques*, 1 Maine, 139. *Butler* v. *Ricker*, 6 Maine, 268.

Nor is the plaintiff more successful as to the fourth supposed breach. That condition applies only to cases where proceedings are had in the probate court upon the estate as an insolvent estate. The records show that this estate was not so dealt with. The paper from the files of the probate court, signed by Duncan, a copy of which is to be found near the bottom of page 36 of the report, does not seem to have been acted on, nor is there anything to show that it was ever presented to the probate judge for action. It is not in the usual form of a representation of insolvency, and the estate cannot be regarded as thereby "represented insolvent" within the meaning of that phrase as used in the sixth condition of the bond. Hence no waste or trespass committed by Charles Crooker, with the consent of the administrator, however clearly proved, is within the condition or amounts to a breach of it.

The paper was rightly held to be competent only as a statement of Duncan, and so far as it has a tendency to show, in connection with other proved facts, fraudulent collusion with Charles Crooker resulting in unfaithful administration and waste, provided the acts here alleged are to be regarded as a breach of either of the conditions of the administrator's bond. The case on this point is briefly as follows:

The deceased was the *non compos* son of Mrs. Hannah Crooker, with whom he lived till her death in 1858. She left property to the amount of $10,000 or $12,000 in value, and a will, the first item of which is: "It is my will, and I hereby direct my executors to provide out of my estate, maintenance for my son Jonathan H. Crooker, in all things necessary for his support in sickness or

health during his natural life." After some other devises and provisions, the residue of her property, real or personal, is devised and bequeathed to her sons Charles and William D. Crooker, whom she makes joint executors. This will was admitted to probate at the July term of the probate court, 1858, at an adjournment of which, a petition for the appointment of a guardian to Jonathan H. Crooker was presented, upon which the regular proceedings seem to have been had, and Duncan, the present administrator, was appointed guardian in September following, and filed his bond and took out his letters of guardianship and warrant of appraisal, returned an inventory, filed an account of guardianship in December, 1867, and settled it in January, 1868, in which he charges himself with his ward's proportion of sums received of different parties for logs, pasturing and ice, to the amount of $236, and asks allowance, among other things, for $2345.24, paid Charles Crooker, for board, clothes, washing &c., for the ward, from March 13, 1858, to October 13, 1867, upon which item the probate judge seems to have allowed $1371.28. William D. Crooker took an appeal from the decree allowing this account which was pending at the time of his death; and after the death of Jonathan H., which occurred in May, 1870, and after the appointment of Duncan, as administrator, this appeal was dismissed from the docket of the appellate court. After his appointment as administrator, Duncan subscribed a paper addresssed to the judge of probate representing that there was due to Charles Crooker from the estate of the deceased $2029, that there was no personal property, and that the real estate was insufficient to pay that claim.

At the October session of the probate court, 1870, he presented a petition alleging that the personal estate was not sufficient to pay the debts by $2500, and that an advantageous offer of $1550 was made for all the real estate, upon which petition notice was ordered returnable at the November term, 1870, at which term the petition was dismissed. At the August term of the supreme judicial court in this county, 1871, Charles Crooker brought his action against Duncan, as administrator, for bills for the mainte-

nance of the deceased, from March, 1858, up to the time of his death, to the amount of $3699.47, less a credit of $236, which seems to consist of the same items for sums received for logs, pasturing and ice, with which Duncan charged himself as guardian in his guardianship account. Duncan allowed the action to be defaulted, and judgment was rendered for the amount claimed. He chose an appraiser at the making of the levy, and the real estate of the deceased was appraised at $2516, and set off in part satisfaction of the judgment thus obtained. There was testimony offered by the plaintiff to the effect that Duncan, as guardian, claimed to have control of property belonging to the Hannah Crooker estate for the benefit of his ward; that he received pay for pasturage upon it; that very large quantities of timber and wood were cut from it, after the death of Hannah and before the death of Jonathan; that Jonathan continued to live in his mother's house after her death, and that a family lived there who paid their rent by taking care of him. Among the more important and noticeable items in the bills, upon which Charles Crooker obtained his judgment against Duncan, as administrator, are numerous charges for cash paid to different persons for personal service, for wood, milk, rent and the fees paid to the appraisers of the property. It cannot be denied that there is much here, which unexplained tends strongly to prove the fraud and collusion between the administrator and Charles Crooker, which the plaintiff charges.

But the troublesome questions which arise here are—if this fraudulent unjustifiable act on the part of the administrator is admitted or proved, what condition of his bond is thereby violated? And if it can be deemed within either of the conditions, what damage has resulted? Reversing the order of these questions, we remark in reference to the second; it is difficult to see how upon the plaintiff's theory of the facts, there could be anything more than nominal damages assessed.

The real estate which belonged to Jonathan H. Crooker, descended to his heirs-at-law at his death, liable only to be sold for the payment of his debts by license from the probate court, or to be taken upon an execution which is not only levied in due form,

but is issued upon a valid judgment not tainted by fraud and collusion between the parties thereto.

A judgment thus tainted can be impeached in a collateral proceeding by any person not a party or privy thereto, whose interests are liable to be unfavorably affected thereby. *Granger* v. *Clark*, 22 Maine, 128. *Pierce* v. *Strickland*, 26 Maine, 277. *Pierce* v. *Jackson*, 6 Mass., 242.

The heirs of a party deceased have only to maintain their possession, and the person who seeks to oust them as a levying creditor, if he has no better foundation than a judgment obtained by a fraudulent collusion with the administrator of the deceased, will fail. Or, if they elect to consider him a disseizor, the proof which they must produce in order to maintain the position which they claim should be decisive of this suit in their favor, would invalidate his judgment and levy and give them judgment for possession. How can they be said to have suffered any damage? The plaintiff's counsel claims that they may have damages assessed for the cloud cast upon their title. It is too shadowy a cause. Until it is ascertained by actual experiment what expense must be incurred in prosecuting or defending, there is no basis upon which the damages can be estimated.

But if this difficulty could be surmounted, there is another, which, upon both principle and authority, we deem fatal.

The only condition of the bond, which is said to be violated by mal-administration of this sort under the circumstances of the present case, is the one which provides that the principal shall "administer according to law all the goods and chattels, rights and credits of the deceased." But this obviously relates to the personalty only, and not to the real estate over which the administrator, except by consent of the heirs, has no authority or control, unless by virtue of a license from the probate judge to sell it for the payment of debts, upon the granting of which, he is required to furnish another bond differently conditioned.

In practice the amount of the administration bond required is in ordinary cases fixed at double the supposed value of the goods and chattels, rights and credits which are to go into the hands of the administrator; and from any malfeasance, seriously prejudic-

ing the rights of the heirs in the real estate, the bond would often prove, as here, an inadequate protection on account of the relatively small value of the personalty. The language of the condition cannot by any reasonable construction be made to apply to such misbehavior of the administrator as is here alleged.

It does not follow that there is no remedy. Any such maladministration may be checked by a petition for removal, and, if it results in loss, by suit in law or equity against the parties to the conspiracy to defraud; but the sureties upon the administration bond can be held only according to their covenants.

The probate court is the proper forum for the investigation of these charges of misbehavior, and the probate judge not only has the power, but it is his duty, to remove the offender when the charge is established.

But the books show repeated instances where the administration bond has been directly or indirectly held to furnish no remedy for the improper conduct of the administrator with reference to real estate. *Henshaw* v. *Blood*, 1 Mass., 35. *Wildridge* v. *Patterson*, 15 Mass., 148. *Drinkwater* v. *Drinkwater*, 4 Mass., 354. *Nelson, J.*, v. *Jaques*, 1 Maine, 139. *Freeman, J.*, v. *Anderson*, 11 Mass., 190.

In the latter case the precise argument which is urged here, (that the statute declares that unreasonable delay to raise money out of the estate for the payment of debts and consequent subjection of the estate to be taken in execution shall be deemed waste and unfaithful administration,) was considered; and it was held that the bond did not cover such neglect.

If the actual subjection of the real estate to be taken upon an execution issued on a valid judgment, and thereby in the view of the law wasted, is not a breach of the condition referred to, still less is the futile collusion with intent to defraud by suffering it to be taken by a levy which cannot stand when proof of the collusion is exhibited.

But we think there was testimony tending to show a breach of the condition to return a true inventory of the rights and credits of the deceased, upon which it was the right of the plaintiff to have the jury pass. Looking at the evidence as to the time when

Duncan took the guardianship of the deceased, and as to his acts and declarations while he was officiating in that capacity, it would be difficult not to believe that he knew of the clear right to a maintenance out of the estate of Hannah Crooker which the deceased had under her will, which ought to have been made available; and if the testimony as to the dealings with the estate of Hannah Crooker and that which Jonathan appears to have inherited from his father, is to be credited, then it would seem probable that there were considerable sums due the estate of Jonathan for waste, trespass, rents and profits accruing in his life time.

That a failure to render a true inventory of such matters is a breach of one of the conditions of the bond, and that the return of an untrue and incomplete inventory will not save it, and that no citation before the probate court is essential to the maintenance of a suit of this description, commenced by special authority from the judge of probate for the benefit of the estate, are points which have all been settled in *Potter, J.,* v. *Titcomb,* 10 Maine, 53, and *Groton, J.,* v. *Tallman,* 27 Maine, 68.

For this cause, the plaintiff's exceptions must be sustained, the nonsuit taken off and a new trial granted, at which this matter may be more fully investigated.

But it should not be forgotten that by far the most convenient and complete remedy is afforded, even in cases of a breach of this condition, by a resort in the first place to the probate court where such specific decree may be had as will do justice to all parties; for non-compliance with which, a suit on the bond in the common law court may be maintained if found necessary, and the damages much more satisfactorily ascertained and assessed.

The wise caution contained in Redfield on Wills, part second, c. 3, §§ 2, 7, p. 83, is obviously pertinent.

*Nonsuit set aside.*

*Case to stand for trial.*

APPLETON, C. J., WALTON, DANFORTH, VIRGIN and PETERS, JJ., concurred.