## IN THE

# SUPREME COURT

### OF

## PENNSYLVANIA.

## Middle District. June Term, 1812.

REICHART *against* CASTATOR and others.

IN ERROR.

**E**RROR to the Common Pleas of *Northumberland* county.

This was an ejectment by *Castator* and others, who were plaintiffs below, to recover part of a tract of fifty acres of land, which it was admitted had been duly vested in one *Henry Reichart.*

The plaintiffs represented the daughters of *Henry Rei-chart;* the defendant, *George Reichart,* was his son, and gave in evidence a deed from his father to himself, dated the 29th of *December* 1803, for the fifty acres, reciting that *George* had paid sundry debts for his father according to a schedule said to be annexed, (but which was not) and had for a long time past supported the wife of his father; and in considera-tion of these, and five shillings, the deed was made.

The plaintiffs then offered in evidence the deposition of *Mary Reichart* the widow of *Henry,* who deposed " that the deed was executed by her husband in the jail of *Northum-berland* county, where he was a prisoner; that he did not ask her to execute it; and that he told her, *he only did it for a sham, so that the people could not come at it.*" This evidence

1812.

*Sunbury,*
*Tuesday,*
June 9.

Declarations by the grantor at the time of exe-cuting a deed, that *he only did it for a sham, so that the people could not come at it,* are not evi-dence, if made in the absence of the grantee, un-less a ground is previously laid, by shewing a trust in the gran-tee, or his parti-cipation in the fraud.

A deed made to defeat and de-fraud creditors, is void as against creditors; but not so against the grantor him-self, or his chil-dren.

was objected to by the defendant, but admitted by the court, who sealed a bill of exceptions.

The facts came before this court in a very imperfect state; but from the charge of the presiding judge, which was brought up with the record, it appeared that he instructed the jury as follows, viz. that the plaintiffs, who were *Henry Reichart's* daughters, did not stand in the same situation with their father in relation to this deed; that as it would be void against creditors, if there were creditors whom he intended to defraud, so it ought to be void against his female children. Next to the claim of creditors, the claim of nature ought to be considered. The verdict was for the plaintiffs.

The questions in this court were therefore two, 1. Whether the deposition had been properly admitted. 2. Whether, supposing the deed to have been made to defraud creditors, as to whom it would be void, it would also be void as to the plaintiffs.

*Duncan* argued for the plaintiff in error. 1. On the first point he contended that the declarations of the grantor were not competent to establish a trust; but if they could be under any circumstances, they were not when made in the absence of the grantee. He cited *Bartlett* v. *Delprat* (a), *Peake's Ev.* 96. 104. 105., *Sugd.* 116. 2. On the second, he contended that if there was a fraud, the children could not set it up, and take advantage of it. Fraud is irrevocable by him who commits it, and by those who claim as his heirs or representatives. 1 *Fonbl.* 128. 264. *note,. Max. in Eq.* 2d *max.*, *Hawes* v. *Leader* (b), *Osborne* v. *Moss* (c), *Montefiori* v. *Montefiori* (d).

*Huston* and *Watts* contra. Declarations at the time of executing a deed, may be given in evidence to shew fraud, or to prove a trust. No exception lies to them, in consequence of their being parol, for it is the only mode in which fraud can be proved; and the circumstance of their being made at the time of executing the deed, of itself makes

(a) 4 *Mass. Rep.* 702.  (c) 7 *Johns.* 161.
(b) *Cro. Jac.* 271.  (d) *W. Black.* 363.

them evidence. Lessee of *Dinkle* v. *Marshall* (a), *Hutchins* v. *Lee* (b), *Willis* v. *Willis* (c), *Young* v. *Peachy* (d), *Gregory's Lessee* v. *Setter* (e), *Lessee of German* v. *Gabbald* (f). 2. This deed was fraudulent and void. The grantor was in jail for burglary, and supposed his estate liable to forfeiture. He therefore intended to defeat the commonwealth. Such a conveyance cannot stand; *Young* v. *Peachy* (g); and not only creditors and purchasers, but younger and unportioned children, are objects for whom, in equity, it will be set aside. 1 *Bac. Abr.* 112. *Agreements, B.* 2.

1812.

REICHART
v.
CASTATOR.

TILGHMAN C. J. In this case there is a bill of exceptions to the admission of *Mary Reichart's* deposition as evidence, and also an exception to the opinion of the court on the evidence, in their charge to the jury. Before the deposition was offered, *Reichart*, the defendant below, had given in evidence a deed from his father *Henry Reichart* to himself, for the land in dispute. The deed was expressed to be made in consideration of sundry debts paid by the son for the father, and in consideration that the son had, for a long time, supported his father's wife, and also of 5s. paid by the son to the father. The deposition went to prove, that at the time of the execution of the deed, the grantor declared " that " he only did it for a sham, so that the people could not " come at his land." It does not appear that the grantee was present at the time of this declaration, or in any manner assenting to it, so that I cannot conceive any principle of law under which it was admissible. The question is not (as the counsel treated it in the argument) whether parol evidence might be admitted to show a fraud, or a secret trust, but whether *ex parte* declarations of the grantor were evidence to contradict his deed. There is no occasion to say, whether such declarations might be admitted as supplementary evidence, a ground having been laid by previous testimony tending to show a trust, for the case on the record stands on the naked unsupported deposition. Under these circumstances, I am clearly of opinion that it was not evidence.

(a) 3 *Binn.* 587.    (c) 2 *Atk.* 71.    (e) 1 *Dall.* 193.    (g) 2 *Atk.* 253.
(b) 1 *Atk.* 447.    (d) 2 *Atk.* 254.    (f) 3 *Binn.* 302.

In considering the judge's charge, it appears that the whole evidence is not set forth in the record; for in stating the facts, he mentions that *Henry Reichart* was in jail, and had suspicions that his property would be forfeited to the commonwealth. There is nothing of this in *Mary Reichart's* deposition. She only says that her husband was in jail, and declared that he made the conveyance to prevent the *people* from coming at his land. I should rather understand from this, that he meant to defraud his creditors, or, perhaps, if he was charged with felony, those persons who, on his conviction, would be intitled to restitution of their stolen property, and may be considered in the light of creditors. It is impossible to form a satisfactory opinion on the case as it really stood before the court of Common Pleas, because we are left to guess at it. But, taking it on the deposition, which is the only evidence on the record, it appears that *Henry Reichart* made a conveyance to his son with an intention of defrauding some persons who had just claims on his property. That being the case, the deed would be void as to the persons intended to be defrauded, but good against himself and his daughters claiming under him. The judge was mistaken in his opinion, when he placed the daughters on the footing of creditors. Creditors have a legal right to take the property of their debtor in execution; and any conveyance made to defeat them is void, not only by statute, but at common law. But children have no such right. What they receive from their father is his bounty, and he has the undoubted right of disinheriting them, either by deed or will. The judge concluded his charge by telling the jury, that if they believed the deposition of *Mary Reichart*, as he did, their verdict should be for the plaintiffs. In this he was wrong, for it is only proved by that deposition, that the grantor declared the conveyance to be intended by him as a sham &c., but not that the grantee considered it as a sham. Now if a man makes a voluntary conveyance to his son, and delivers to him the deed and possession of the land, the conveyance cannot be avoided, either by the father or the other children claiming under him, whatever may have been the secret intention of the father, uncommunicated to the son. Upon the whole of this record, I am of opinion that there is error, both in the admission of the deposition of *Mary*

*Reichart*, and in the charge of the court. The judgment must therefore be reversed, and a *venire facias de novo* be awarded.

YEATES J. The law on principles of general policy, will not permit the grantor of lands to invalidate his own conveyance by declarations subsequently made, nor will it suffer a man to make evidence for himself. The assertions of a vendor of lands in the presence of his vendee, have been received in evidence, on the grounds contained in the maxim of " *qui tacet, consentire videtur*." It is true, where reasonable grounds have been previously laid before the court, to induce a belief, that a fraud has been committed to the injury of third persons, testimony is admissible of the declarations of either of the parties to such fraud in the absence of the other party, in like manner as is done in charges of conspiracy. Applying these rules to the case before the court, it not appearing that *George Reichart* was present when *Henry Reichart* made the declarations detailed in the deposition of *Mary Reichart*, nor any circumstances shown, which would evince a meditated fraud on others, before the paper was offered in evidence, I am of opinion that the same was improperly received.

If the object of the parties to the deed in controversy was really to establish a trust for the benefit of the father and his family, unaccompanied with any intention of defrauding others, a court of equity would grant relief against the defendant, who unconscientiously refused to execute that trust, by claiming the lands for his own benefit. But I am not aware of any decision, wherein equity has interposed in favour of the parties to the fraud. I see not, however, any thing in this case, which would justify me in considering the conveyance as a mere trust, nor what purpose it could possibly answer in the family, in that point of view. It was considered in the charge of the court below, " that as the " deed would be void against creditors, so ought it to be " void against his female children, whom it is impossible " to suppose the father intended to defraud. Next to the " claim of creditors, the claim of nature is be regarded." From hence it was inferred, that the plaintiffs, the daughters of *Henry Reichart*, did not stand in the same situation

1812.

REICHART
v.
CASTATOR.

as their father. To this system of reasoning, I cannot subscribe.

It is not explicitly stated in the charge, what was the cause of *Henry Reichart's* confinement. It is barely mentioned, that he was in jail, and under the suspicion that his property would be sacrificed in some way or other to the state; and he then seems to have determined to cheat the commonwealth, whom he erroneously supposed would be intitled to his landed property. It has been said during this argument, that he was committed on suspicion of felony or burglary, and broke gaol before trial. I do not see that we can take notice thereof, unless that fact appears on the record before us, though most probably some such matter was admitted upon the trial, which gave rise to the observations made by the court. Under the 30th section of the act of the 31st of *May* 1718, the persons intitled to the restitution of stolen goods on a conviction of larceny, may take out execution against the lands and chattels of an offender, and levy the amount thereof. And under the 9th section of the act of the 23d of *September* 1791, the same remedy is given on a conviction of robbery or burglary, to the owners of the goods stolen, and the residue of the lands and chattels of the offender is forfeited to the commonwealth. Upon a conviction therefore of either of these offences, the owners of the stolen goods might lawfully proceed against the lands of the offenders; and, in cases of robbery or burglary, there would be a forfeiture to the state. A conveyance made to elude those provisions would be fraudulent and void at common law, as well as under the statute of 13 *Elizabeth*, which was made in affirmance thereof, as to the parties intended to be injured thereby.

The question then before us is reduced to one single point, on this part of the case: do the daughters of *Henry Reichart* stand in a different situation from their father as to this deed? The deed, however fraudulent as to creditors, *as to him* is valid and binding; and neither courts of law nor equity would relieve him against his own iniquity, voluntarily practised. His daughters claim under and through him; and, however innocent and unoffending they must be considered of the trick intended by their father, cannot, in a legal sense, be deemed his creditors. His crime will be

visited on them, and the law points out to them no mode of redress, which was not open to their father. Hence I conceive, that the charge of the court was erroneous in this, that the plaintiffs below stood in a different situation from their father as to the deed under consideration.

I am of opinion, that the judgment of the court of Common Pleas be reversed, and a *venire de novo* awarded.

BRACKENRIDGE J. was prevented by sickness from attending, and gave no opinion.

Judgment reversed.