Walworth, Chancellor.
Upon the question as to which the chief justice differed in opinion with his associates in this case, I think they were in the right. It is a general rule that no court will aid a party to an illegal contract which is executory only, to recover thereon. And where the contract is executed, a court will not aid a particeps criminis in setting it aside. Where both parties are equally offenders against the positive laws of the country, or the general principles of public policy, or the laws of decency or morality, potior est conditio defendentis; not because the defendant is more favored where both are equally criminal, but because the plaintiff is not permitted to approach the altar of justice with unclean hands. The exceptions to this rule are some few cases where the law which creates the illegality in the transaction was intended to restrain the one party and to protect the other; as in the case of extortion by public officers in receiving illegal fees, contracts by lenders of money upon which usurious interest has been paid, &c. In cases of this kind there is no parity of delictum, between the parties; the one only yielding a constrained acquiescence in the illegal act of the principal offender. But in *427 the case of a fraudulent agreement, the object of which is to injure a third person or to deprive him of his remedy for the recovery of his debt, both parties to such agreement are equally guilty of an offence against the laws of morality and of social order; and there is no good reason why the general rule should not be applied to them, as well as to any other offenders against the laws or against the principles of morality or public policy.
A sale or assignment for the purpose of delaying, hindering, or defrauding a creditor in the collection of his debt, was illegal at the common law, and is in itself immoral and against public policy. And the statutes declaring such transactions void as against creditors, are only in affirmance of the common law on that subject. The word only, as used in the statute of Elizabeth and in our revised statute of 1787, on this subject, was not intended to render executory contracts of that character legal and valid between the parties thereto. But it was inserted to prevent the general provisions of the statute from changing the common law rule, as between the parties themselves, in relation to executed contracts. The decision of the court of king’s bench in Hawes v. Leader, (Cro. Jac. 271,) which case is also reported by Brownlow and by Yelverton, proceeded upon the ground of an executed contract, in which the title of the goods had actually passed to the grantee by the deed and by a symbolical delivery of the possession. And the attention of the court does not appear to have been called to the fact that the action was founded upon the covenant in such executed contract, and not upon a distinct and independent agreement to deliver up goods, the title to which had been previously vested in the plaintiff by a valid sale. The case of Osborne v. Moss, (7 John. Rey. 161,) in the supreme court of this state, was an action against the administrator of the former owner for taking goods out of the possession of Osborne, the legal title to which goods was vested in him by an executed contract. It was therefore a case in which the same decision must have been made if the parties to the fraudulent transfer had contracted for the *428 sale of the goods upon any other corrupt and illegal consideration. The cases of Jackson v. Garnsey, (16 John. Rep. 189,) Drinkwater v. Drinkwater, (4 Mass. Rep. 354,) Doe v. Roberts, (2 Barn. & Ald. Rep. 367,) Steel v. Brown & Parry, (1 Taunt. Rep. 381,) Reichart v. Castator, (5 Binn. Rep. 109,) and Stewart v. Kearney, (6 Watts’ Rep. 453,) referred to by the counsel for the plaintiff in error, were suits for the property which had been fraudulently sold or assigned, and where the legal title to such property had become vested in the grantees by virtue of executed contracts. The case of Montefiori v. Montefiori, (1 Wm. Black. Rep. 363,) was decided upon a different principle ; to wit, the protection of the party intended to be defrauded by the contract upon which the suit was brought. The defendant, for the purpose of defrauding the intended wife of his brother, by holding him out to her and her friends as a man of property, gave to such brother a note for a large amount as due to him upon a settlement of accounts. And he afterwards attempted to set up, as a defence to this note, that there was a secret agreement between him and his brother that the note should be cancelled when the marriage had taken place. The court, therefore, very properly held that it would be a fraud upon the wife of the plaintiff to permit the defendant to repudiate the note. The case of Findley v. Cooley, (1 Blackf. Rep. 262,) decided by Judge Blackford and his associates, in our sister state of Indiana, does, however, directly decide the question, that in the case of an executory contract made to defraud creditors, the defendant cannot set up the fraud as a defence to a suit brought thereon by a parti ceps criminis.(a) It is evident, however, that the distinguish *429 ed judge whos delivered the opinion of the court in that case did not examined the question ■ with his usual care and discrimination. For he lost sight of the distinction which 'exists between an executed and an executory contract tainted with fraud or other illegality. And he seems to take it for granted ■that if the defendant could not himself avoid the fraudulent conveyance which he had received, he was bound to pay the consideration of that conveyance to the fraudulent grantor, or those who were suing for her benefit.
But the well reasoned opinion of Chief Justice Mellen, in the case of Smith v. Hubbs, (1 Fairf. Rep. 71,) shows the true principles upon which courts of justice proceed in suits between parties to contracts of a fraudulent or illegal character ; from which opinion it appears that the decision of the court of Indiana was a departure from those principles. He says : “ There is a marked and settled distinction between executory and executed contracts of a fraudulent or illegal character. Whatever the parties to an action have executed for fraudulent or illegal purposes, the law refuses to lend its aid to enable either party to disturb. Whatever the parties have fraudulently or illegally contracted to execute, the law refuses to compel the contractor to execute or pay damages for not executing; but in both cases leaves the parties where it finds them.” And the decisions referred to by him show most clearly that it makes no difference, in the case of a suit upon an executory contract, whether the proof to establish the fraudulent or illegal nature of the transaction comes out from the examination *430 of the plaintiff’s witnesses, or is introduced by the defendant who was himself a party to the fraud. I may also add, that in a recent case, founded upon the new rules of pleading in England, which require the defence in all cases to be stated specially, it has been held that the defendant, who was a particeps criminism an illegal contract, must himself setup that defence to a suit upon the contract, by his plea, or he cannot avail himself of the illegality, even where it comes out upon the direct examination of the plaintiff’s witnesses. (Fenwick v. Laycock, 1 Gale & Dav. Rep. 27.) And in another case, (McKinnell v. Robinson, 3 Mees. & Wels. Rep. 434,) the defendant who had borrowed of the plaintiff money to gamble with, was permitted, in an action brought to recover the money lent, to show the illegal purpose for which the loan was made to him and that the plaintiff knew the' object for which it was borrowed, and thereby defeat the action.
I think, however, that the rule that a party to an executory contract which is contrary to law or public policy, or which has been made for the purpose of defrauding creditors, cannot sustain an action upon such contract, was improperly applied to this case. For, as I understand the facts, the note upon which this suit was brought was a good and available security in the hands of Curtis the original payee, who was no party to the fraud between Buttolph and the defendant Clark. It appears by the case, that Buttolph conveyed his land to Clark for the purpose of defrauding Otis, who had an action pending against him for slander, and that Clark gave his bond and mortgage upon the premises for $700. Buttolph then contracted with Curtis, who was not cognizant of the fraud, to purchase from him a house and lot in Morrisville, and to assign to him the $700 bond and mortgage in part payment of the purchase money. But it was finally agreed between Buttolph, Curtis and Clark, that the latter should give to Curtis the note in question, and another note of' $400, in lieu of such bond and mortgage. The bond and mortgage were accordingly can-celled, and Clark made his two promissory notes for the $700, *431 payable to Curtis or bearer, and. delivered them to Curtis in part payment of the house and lot in Morrisville, which he had by his written contract agreed to convey to Buttolph upon being paid the residue of the purchase money. Upon this state of facts it is perfectly evident to me that the notes were good and available securities in the hands of Curtis; and that Clark could not have set up the fraudulent nature of the original transaction between him and Buttolph to defeat a recovery on these notes. Nor could Curtis have set up that fraud as a defence to a suit brought by Buttolph or his creditors to compel a conveyance of the Morrisville house and lot, upon payment of the residue of the purchase money in pursuance of his contract.
Such was the situation of the parties at the time Buttolph was discharged under the insolvent act, in January, 1829, and assigned all his property and legal and equitable rights to Beecher. Under that assignment Beecher became entitled to the bouse and lot in Morrisville, for the benefit of the creditors ol Buttolph ; subject to the payment of the $200, which was then due lor the purchase money beyond what was paid by the two notes. It appears, however, that Beecher supposed he was entitled to the two notes, as assignee of Buttolph; instead of the contract for the house and lot in Morrisville, in part payment of which contract the notes had been given. He accordingly called upon Curtis for the notes, and they were given up to him. The effect of this transfer of the notes wTas to substitute such notes for the interest which Beecher had in the contract. And as the notes were valid in the hands of Curtis, (hey became good and available securities in the hands of Beecher, as the legal bearer and owner thereof, for the benefit of the creditors of Buttolph. For any other construction of that transaction would operate as a fraud upon the creditors of Buttolph, who were entitled, under the assignment, to the full value of his interest in the house and ot according to the contract, as it existed at the time of his assignment under the insolvent act. After that assignment had been made, Buttolph *432 had no right to interfere in the matter, or to make an arrangement with Curtis to relinquish the contract of purchase and have the notes given up and discharged. Indeed, it appears from his own testimony that when he made the pretended arrangement with Curtis, the latter had already delivered the notes to Beecher the assignee. And as Beecher had a right to recover on these notes, as the lawful bearer and owner thereof, for the benefit of the creditors of Buttolph, the sale or delivery of the notes to Bruce, one of the creditors, to be collected and applied to the payment of the debts of Buttolph, entitled Bruce to such notes. And Nellis, as the lawful bearer of the notes, was entitled to sue in his own name, whether he was the actual owner of the notes, or the suit was brought for the benefit of Bruce and the other creditors of Buttolph.
It appears from the case that Clark has actually lost the land which he fraudulently purchased from Buttolph to enable the latter to defeat the collection of the damages in the slander suit. But that affords no legitimate ground of defence to the suit on this note as a failure of consideration. For when he gave these notes he assumed the risk - of losing his land, if the fraud was discovered and the plaintiff in the slander suit thought proper to enforce his judgment against the land thus fraudulently purchased.
The decision of the judge that the evidence in the case con ■ stituted a legal defence to the suit by the bearer of this note, even if Nellis was aware of all the facts and circumstances of the case at the time of the transfer of the notes to him, was therefore erroneous. For there never was a time when the notes given to Curtis were not legal and available demands and securities, as against Clark the drawer, in the hands of those who were the lawful owners or bearers thereof.
For these reasons I think the decision of Judge Denio, before whom the cause was first tried, was correct, and that the judgment of the supreme court should be reversed and a venire de novo awarded.
*433 Huger, Senator.
I am of opinion that the sale to the defendant was valid and binding as between the parties themselves. No doubt it was void in respect to Buttolph’s creditors ; but that is not enough to relieve the defendant from liability upon his contract. The language of the statute is clear and unequivocal, that sales or assignments made with intent to hinder, delay or defraud creditors, are void only u as against the persons so hindered, delayed or defrauded (2 R. S. 137, § 1;) and it has been held, that such sales are to be regarded as binding upon the immediate parties thereto, their heirs and personal representatives. (Jackson v. Garnsey, 16 John. 189 ; Osborne v. Moss, 7 id. 161.) If this be so, the distinction taken by the supreme court between executory and executed contracts can have no application to this case.
Upon what principle of law, of justice or of sound policy, can we be asked to relieve the defendant from the payment of his note 1 Can he be relieved on the mere ground that he was a party to a transaction designed to cheat and defraud innocent creditors 1 I think not. It is not pretended that the defendant was defrauded. On the contrary, he was himself the deceiver, and attempted to impose upon creditors the belief that the purchase from Buttolph was honest and fair, when, as to them, it was fraudulent and dishonest. By aiding in the commission of a fraud upon creditors, he hoped to enjoy, at a cheap price, what honestly belonged to them; and now, when the whole transaction is exposed, he seeks to be relieved from the performance of his contract by setting up his own fraud as a defence. But, in my view of the law, a party to a fraud of this character cannot avail himself of it to excuse him from the performance of his contract. In the case of Bolt v. Rogers, (3 Paige, 157,) the chancellor says : “ Wherever two or more persons are engaged in a fraudulent transaction to injure another, neither law or equity will interfere to relieve either of those persons, as against the other, from the consequences of their own misconduct.” The same general doctrine will be found maintained by the following cases : Osborne v. Moss, (7 John. *434 161;) Jackson v. Garnsey, (16 id. 189;) Findley v. Cooley, (1 Blackf. R. 262;) Reichart v. Castator, (5 Binn. 109;) Montefiori v. Montefiori, (1 W. Black. 364 ;) Babcock v. Booth, (2 Hill, 181.)
Again : if my views of the case are correct, the defendant’s liability does not depend upon the question whether the sale to him was fraudulent or honest. The note was given some seven months after the sale, and on a transaction having no connection with it. When the deed was executed by Buttolph, in March 1828, he received from the defendant five hundred dollars in cash, and the residue of the purchase money was secured by bond and mortgage. The note in question was .given by the defendant to Curtis in October, 1828, on the sale of a lot by the latter to Buttolph. Curtis received it in part payment of the purchase money, and the bond and mortgage were can-celled. The note was therefore given on the transfer of property entirely unconnected with the alleged fraudulent sale, and for a fair and full consideration. A contract will be upheld as valid, if founded upon a consideration of benefit to the party promising or to a third person ; and here the defendant not only ' received back his own bond and mortgage to be cancelled, but a new consideration entered into the transaction, viz. the sale or contract of sale from Curtis to Buttolph. The following authorities are sufficient to show that there was a valid consideration for the giving of the note Armstrong v. Toler, (11 Wheat. 258;) Booth v. Hodgson, (6 T. R. 410 ;) Petrie v. Hannay, (3 id. 418 ;) Faikney v. Reynous, (4 Burr. 2069 ;) Johnson v. Hudson, (11 East, 180 ;) Simpson v. Bloss, (7 Taunt. 246 ;) Edwards v. Dick, (4 Barn, & Ald. 211;) Chit on Con. 7, Am. ed. of 1834. The note was therefore good in the hands of Curtis, and I am unable to perceive how the transfer of it could have the effect to render it invalid.
But it is said that the defendant has lost the farm conveyed to him by Buttolph, and that the consideration of the note has therefore failed. How has he been deprived of the enjoyment of the farm 1 Not by reason of a paramount title outstanding *435 in a third person ; but by reason of his own fraud. This, is not enough to make out a failure of consideration.
No person respects more than I do the high legal attainments and great moral worth of the judges who have passed upon this case ; but from the vast amount of business disposed of by them and constantly occupying their attention, it is not surprising that they should sometimes err, as I think a majority of them did in this case. I am of opinion that no principle of law, of equity or of public policy, requires us to allow the defendant to avail himself of the unconscientious defence interposed in this case; and that the judgment of the supreme court should therefore be reversed.
Bockee, Senator.
This action is on a promissory note made by the defendant on the 13th of October, 1828, for $300, payable to William T. Curtis or bearer, four years after date, with interest. By the verdict of the jury it is found that the plaintiff had notice of the consideration of the note, and of the facts and circumstances connected with it, before it was transferred to him. The real consideration of the note was the fraudulent sale of land by Buttolph to Clark. A mortgage was first given for a part of the consideration money, for which this note was afterwards substituted and passed to Curtis under circumstances which would doubtless have rendered it available to him as a bona fide purchaser without notice. The arrangement with Curtis being relinguished, and the note delivered over to Beecher, (the assignee of Buttolph,) the original taint of fraudulent consideration adheres to it j and the question therefore arises, whether a note given on a fraudulent sale can be recovered by the payee, or by any holder taking it with knowledge of its fraudulent character. This cause must be decided upon the same principles as if Buttolph were the plaintiff. Beecher, the assignee, stands in the place of Buttolph, and Nellis, the plaintiff, received the note with full knowledge of all the circumstances attending it. He cannot, therefore, claim the protection due to a bona fide holder. The very elaborate *436 opinion of the supreme court delivered by Justice Cowen, and the numerous authorities cited by him, have led my mind to the conclusion that a fraudulent executory contract could not have been enforced between the parties at common law, and that our statute has not altered the rule in this respect. The rule that a party shall not be permitted to allege his own turpitude, does not apply to the defendant in the present case ; because Buttolph is as deeply tainted as he. It would apply if Clark were making this defence against an innocent holder of the note, or in case he was seeking to recover back from Buttolph the consideration money which he actually paid on the purchase of the farm. Neither can the failure of considera- * tion have any weight or influence in the decision of this cause/ The law will not lend its aid to adjust equities between the parties to a fraudulent contract; but leaves them on the same ground upon which they have placed themselves by their acts. This case will admit the joint application of the maxims “ ex turpi causa non oritur actio” and “ in pari delicto melior est conditio possidentis.” The judgment of the supreme court ought to be affirmed.
On the question, being put, “ Shall this judgment be reversed 1” the members of the court voted as follows :
For reversal: The President, the Chancellor, and Senators Bartlit, Ely, Franklin, Nicholas, Platt, Huger and Varney—9.
For affirmance : Senators Bockee, Dixon, Hard, Hunt, Johnson, Paige, Root, Scott, Varían and Works—10.
Judgment affirmed. .

 The case of Fairbanks v. Blackington, (9 Pick. 93,) in its dicta at least, favors the doctrine of Findley v. Cooley; while Norris v. Norris', adm’r, (9 Dana's Rep. 317,) is directly the other way. In the latter, the learned chief justice, delivering the opinion of the court, observed as follows: “ When the parties to an illegal or fraudulent contract are in pari delicto, neither a court of equity, nor a court of law, will aid either of them in enforcing the execution of that wnicli mav be executory, or in revoking or rescinding that which may be executed. In *429 such a case, the law will not be the instrument of its own subversion, and to every invocation of its assistance, replies, ‘ in pari delicto, potior est conditio defendentis.’ Our statute against frauds, which declares that all conveyances, bonds &c., made for the illegal purpose of defrauding bona fide creditors or purchasers, shall be void only as to any such creditor or purchaser, has never been construed as having been intended to change the conservative principle just defined. It leaves the parties still, as between themselves only, to stand on the ground of the common law. And therefore, a party to an executory agreement made to defraud creditors or purchasers, has no more right to maintain a suit for coercing the execution of it, than a party to an executed contract for the same illegal end, would have to prosecute a suit for restitution or rescission.”