The opinion of the Court was delivered by
Glover, J.
In the opinion of a majority of the Court, *603 the evidence was properly admitted. The question is, can the obligor of a bond, given for the purpose of defrauding creditors, rely upon the fraud in a suit on the bond brought by oneparticeps fraudis. In the case of Broughton vs. Broughton, (4 Rich. 491,) referred to in support of the appellants’ motion, it was held that the defendant, who had executed a conveyance of his land to defraud his creditors, could not show the -fraud of the grantee and himself in an action of trespass to try the title brought against him by the grantee or his heirs. The same point had before been made in Sumner vs. Murphy, (2 Hill, 488,) and O’Neall, J., delivering the judgment of the Court, observes: "the defendant, by a stern but a proper policy of the law, is excluded from the proof which would .show the fraud. He is, in this respect, the actor; his fraud silences and estops him from averring against the deed.” The general principle is well settled both by English and American cases, and -they proceed upon the ground that a party to a deed impeachable for fraud or illegality shall not be heard, to aver the existence of his fraud, and thereby prevent the operation of the doctrine of estop-pel. The rule, however, that a deed is conclusive by way of estoppel, was qualified by the Court in the case of Collins vs. Blantern, (2 Wil. 344.) The action was debt on a joint and several bond executed by the defendants to the plaintiff, to indemnify him in respect to a note given to stifle a prosecution ; and one of the points discussed was, whether, supposing the bond to be void, the facts disclosed in the plea to show that it was so could be averred and specially pleaded. It was held that the bond was void ab initio, and never had any legal entity, and that the maxim that the law will not endure a fact in 'pais, dehors a specialty, to be averred against it, did not apply. This decision has ever since been followed, and it is now well established that fraud or illegality is a good defence to a contract under seal.
In the application of the general rule recognized in *604 Broughton vs. Broughton, and of that adopted in Collins vs. Blantern, a distinction will be found between executed and executory contracts, between conveyances of land or other property and bonds or covenants, where the aid of the Court is asked to enforce the payment of the one or the performance of the other. In executed contracts, the maxim applies, quod fieri non debet,factum valet; whereas, in those which are executory, the rule of law is, ex dolo malo non orritur actio; and this distinction is well sustained by numerous cases .both in England and in this country. In Phillpotts vs. Phillpotts, (70 Eng. C. L. R. 85,) four several annuities, chargeable on certain lands, were granted for the fraudulent purpose of conferring a vote contrary to certain English statutes; and it was held, that as between the parties, the conveyance was effectual, but that it was void to the extent of conferring a right to vote. This case is fully sustained by Doe d. Roberts vs. Roberts, (2 B. & Ald. 367,) where an estate was conveyed from one brother to another for the purpose of giving a colorable qualification to kill game, and, as against the par. ties to the deed, it was held valid; but no right to kill game was conferred. In Bessey vs. Windham, (6 Adol. & Ellis N. S. 166,) the jury found the deed conveying the defendant’s property fraudulent, and the Court agreed to the position taken by counsel that though it might be void against creditors, it operated to pass the goods as against the party himself and strangers, and the case of Doe dem. Roberts vs. Roberts, was the authority relied upon. In a suit for the breach of covenant in a composition deed, whereby defendant and others- had covenanted to indemnify the plaintiff from loss respecting certain acceptances, and the defence was, that before executing the indenture, the parties had agreed that the defendants should receive from the plaintiff more than his other creditors; the defence was sustained on the ground that such-a secret bargain is a fraud on the other creditors, and void when it was made and Parke, B., observes, “ being *605 executory,- it cannot be enforced even against a fraudulent party.” (Higgins vs. Pitt, 4 Wels., Hurl. & Gordon, 312.) The case of Montefiori vs. Montefiori, (1 W. Bl. 364,) was not decided on the principle which is applicable to the cases cited above. The note given by the defendant was for the purpose of defrauding the intended wife of the plaintiff, who was not particeps criminis, but an innocent person, and the language employed by Lord Mansfield, “that no man shall set up his own iniquity as a defence any more than as a cause of action,” applies to a defence set up against the wife, and not against the husband. Walworth, C., referring to this case, says it was decided on a different principle, and that the Court very properly held that it would be a fraud upon the wife of the plaintiff to permit the defendant to repudiate the note. (Nellis vs. Clarke, 4 Hill N. Y. R., 424.) That Lord Mansfield, when he said “ no man shall set up his own iniquity as a defence,” etc., intended to apply the. remark to a defence against an innocent party, is manifest from the language which he uses in Holman vs. Johnson, (Cowp. 343:). “ The objection that a contract is immoral or illegal, as between plaintiff and defendant, sounds at all times very ill in the mouth of the defendant. It is not for his sake, however, that the objection is ever allowed, but it is founded in general principles of policy Avhich the defendant has the advantage of, contrary to the real justice as between him and the plaintiff) by accident, if I may so say. The principle of public policy is this': Ex dolo malo non oritur actio. No Court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act.
“If, from the plaintiff’s own stating or otherwise, the cause of action appears to arise ex turpi causa, or the transgression of a positive law of this country, there the Court says, he has no right to be assisted. It is upon that ground the Court goes, not for the sake of the defendant, but because they will not lend their aid to such a plaintiff) So, if the plaintiff and *606 defendant were to change sides, and the defendant were to b ing bis act-ion against the plaintiff' the latter would then . have the advantage of it, for, where both are equally in fault, potior est conditio defendentis.” One of the earliest cases is Hawes vs. Leader, (Cro. Jac. 270.) The defendant’s intestate granted to the plaintiff all his goods mentioned in a schedule annexed to the deed, and gave him possession by a platter, covenanting that they should remain in his house, and on demand to be carried away by the plaintiff; and to perform this covenant bound, himself in forty pounds,to the plaintiff. After the death of the intestate, the plaintiff demanded the goods of the administrator, who refused to deliver them, wherefore the plaintiff brought an action of debt in the detinet for the conversion of the goods, and in his declaration showed in specie what goods were in the schedule. (Tide Yelverton, 196, where the case is reported as Hawes vs. Loader.) It was adjudged for the plaintiff on several grounds, arising on demurrer to the pleadings, and among others on the following: That fraudulent gifts are only void against purchasers and creditors, but not against . the parties themselves or their representatives. The action was on an executed contract to recovér the goods which were set out in specie, and the plaintiff did not ask the aid of the Court to execute that which the intestate had promised to perform. Like the plaintiff in Broughton vs. Brough-ton, he relied upon his deed, which conveyed the property. The American cases make the same distinction between executed and executory contracts, in the application of the rule. (Jackson vs. Garnsey, 16 John. 189; Richart vs. Castator, 5 Binn. 109; Clapp vs. Firrel, 20 Pick. 247; Osborn vs. Moss, 7 John. 161; Inhab. Worcester vs. Eaton, 11 Mass. 375.) Mellen, C. J., in Smith vs. Hubbs, (1 Fairf. 71,) speaking of contracts, fraudulent or illegal, says: “ There is a marked and settled distinction between executory and executed contracts of a fraudulent or illegal character. Whatever the *607 parties to an action have executed for fraudulent or illegal purposes, tbe law refuses to lend its aid to enable either party to disturb. Whatever the parties have fraudulently or illegally contracted to execute, the law refuses to compel the contractor to execute or pay damages for not executing; but ’in both cases leaves the parties where it finds them.” So, too, in Norris vs. Norris, (9 Dana, 317,) the same distinction is taken: “ When the parties to an illegal or fraudulent contract are in pan delicto, neither a court of equity nor a court of law will aid either of them in enforcing the execution of that which may be executory, or in revoking or rescinding that which may be executed. In such case the law will not be the instrument of its own subversion, and to every invocation of its assistance replies, in pan delicto potior est condi~ tio defendentis.” Walworth, C., in the case of Nellis vs. Clarke, (4 Hill N. Y. R. 424,) approving the doctrine laid down in these eases, adds: “And the decisions referred to show most-clearly that it makes no difference in the case of a suit upon an executory contract, whether the proof to establish the fraudulent or illegal nature of the transaction comes out from the examination of the plaintiff’s witnesses, or is introduced by the defendant, 'who was himself a party to the fraud.”
The declarations of the obligee in the principal case show that the bond was executed to secure the obligor’s property from his creditors, and that it was, therefore, fraudulent, and the Court is asked to lend its aid to enforce such a contract. To every such application, the answer should be in the language of Wilmot, C. J.: “You shall not stipulate for iniquity; no polluted hand shall touch the pure fountain of justice.” (Collins vs. Blantern.) If, by enforcing the payment of this bond, the guilty party could be punished, the forms of law might be properly invoked, but these parties are in pari delicto, and to aid the obligor in recovering his debt would be to offer a premium to those who assist others *608 in executing tbeir fraudulent purposes. The assistance of the Court will be withheld where a party seeks to rescind, or to have declared void, an illegal or fraudulent conveyance of property, in cases par delictum,, leaving the rogue in the tangled web which he has assisted to weave to catch others; Broughton vs. Broughton. Nor will one who has paid money on a fraudulent agreement be helped to bring it back, because in pari delicto potior est conditio possidentis. (Bostic vs. McCanen, 2 Brev. 275.) And where the obligee of a penal bond, to secure the payment of money founded upon a fraudulent consideration, asks the aid of the Court to secure the fruits of his contract, it will also be withheld; if the attempt be to stifle a prosecution, his purpose is to cheat the State; if t,o protect his property, to cheat his creditor. We approve the case of Broughton vs. Broughton, and recognize the distinction taken by the cases referred to between that case and others, where the contract is incomplete, and the Court is asked to aid in consummating it. A majority of the Court is of opinion that the appeal should be dismissed.
O’Neall and WhitNER, JJ., concurred.